C. COLUMBUS GRIFFITH *vs.* SAMUEL W. PLUMMER and MARY E., his Wife, and HENRY A. GRIFFITH.

*Construction of a Devise—Rule in Shelley's Case.*

A testator devised as follows: "Item. I give unto my son Lyde, one hundred and sixty acres, to include the buildings where Benjamin King now lives, in trust, together with nine negroes, to wit: (naming them,) in trust for his sister Rachel, the one hundred and sixty acres of land for her only use and benefit, and none other person to have any control over it, and after her decease, to go to her heirs in fee tail." The testator's daughter, Rachel, was, at the date of the will, and at his death, a married woman. HELD:

1st  That the daughter took an equitable life estate in the land devised, and that the legal estate therein vested in her heirs, in fee.

2d.  That the rule in Shelley's case did not apply, the two estates not being of the same quality.

APPEAL from the Circuit Court for Frederick County, in Equity.

The object of the bill of complaint, in this case, was to obtain a decree for the sale of certain real estate, devised by Lyde Griffith, late of Montgomery county, in trust for his daughter, Rachel, and to have the proceeds of sale distributed among her heirs at law.  The complainants, the present appellees, (two of whom, namely, Mary E. Plummer and Henry A. Griffith, were children of the said Rachel,) contended that under the will of the testator, his daughter took only an equitable life estate in the land devised, and that the legal estate therein vested in her heirs in fee.  On the other hand, the appellant, one of the defendants, and a son of the said Rachel, maintained that his mother, under the will of her father, took a fee-simple estate in the land in question; and that she devised the same to him when she was a *fême sole*, her husband having died some time previously.  The Circuit Court adopted the view urged by the appellees as to the construction of the devise, and being satisfied, from the proof in the cause, that the land did not admit of advantageous partition among the parties interested, decreed that the same should be sold for the purpose of distributing the proceeds among them.  From this decree the present appeal is taken.

The cause was argued before BARTOL, C. J., STEWART, MAULSBY, GRASON, MILLER and ALVEY, J.

*Frederick J. Nelson,* for the appellant.

The present case is directly within the rule in Shelley's case, and Rachel Griffith, under the provision of her father's will, takes a fee-simple.  2 *Black. Comm.,* 172 (*n.* 3;) *Fearne*

*on. Con. Rem.*, 21, 25. The devise meets every requirement of the rule: 1st. The ancestor (Rachel) takes by gift an estate of freehold; 2d. By the same gift, an estate is limited immediately to her heirs in tail (now abolished and converted into a fee-simple.) *Newton vs. Griffith*, 1 *H. & G.*, 112; *Posey's Lessee vs. Budd*, 21 *Md.*, 477.

A rule qualifying the rule in Shelley's case is, that where the estate for, life and, the remainder in fee or in tail, unite and coalesce, and "*heirs*" is a word of limitation, the two estates must be created by the same instrument, and must both be either legal or both trust estates. 2 *Term R.*, 444. Was, then, the trust created by this devise executed in the devisee, Rachel, and does it unite with the subsequent legal limitation to her heirs in fee-tail? From the tenor of the authorities, it would seem clear that the trust *was* executed in Rachel, and united with the subsequent *legal* limitation. The rule is, that where, by the nature of the trust created, it is not necessary or requisite that the estate should remain in the trustees, in order to carry the purposes of the trust into execution, *there the trust is executed* by the statute, and the *legal estate* vests in the *cestui que trust. Broughton vs. Langley*, 2 *Salk.*, 679; *Eq. Ca. Abr.*, 383; *Silvester vs. Wilson*, 2 *Term Rep.*, 447; *Ware, et al. vs. Richardson*, 3 *Md.*, 505. By this devise to Rachel she was to have the sole control, exclusive of every one, of the estate devised.

*Grayson Eichelberger* for the appellees.

In support of the view urged in behalf of the appellees, viz: that Rachel Griffith took only an equitable life estate under the devise, and that the legal estate vested in her heirs in fee, the following authorities were referred to: *Ware, et al., vs. Richardson*, 3 *Md.*, 505; *Ayer vs. Ayer, et al.*, 17 *Pick.*, 327.

MILLER, J., delivered the opinion of the Court.

The decision of this case depends upon the construction of the following clause of a will, executed in 1836 and admitted to probate in 1839:

"*Item.*—I give unto my son Lyde, one hundred and sixty acres, to include the buildings where Benjamin King now lives, in trust, together with nine negroes," (naming them,) "in trust for his sister Rachel; the one hundred and sixty acres of land for her only use and benefit, and none other person to have any control over it, and after her decease to go to her heirs in fee-tail."

The testator's daughter Rachel, here named, was, at the date of the will and at his death, a married woman, the wife of an intemperate and improvident husband, and the sole question presented by the record is, whether she took a life estate or a fee in the land thus devised. The rule in *Shelley's case* has not been abolished by statute in this State. It still remains a part of our system of real law, and if the clause of the will now to be construed presents a case falling within its operation, the pretensions of the appellant must be sustained. But one of the conditions essential to the operation of the rule is, that the estate limited to the ancestor and that limited to the heirs must be of the same quality. They must both be legal or both equitable estates, for, if the ancestor takes an equitable or trust estate, and the heirs an executed use or legal estate, the rule does not apply. The estate given in this case to the heirs is, without any dispute, a legal one, and, by operation of our Acts to direct descents, is converted from an estate tail general into an estate in fee simple. But what is the nature of the estate given to Rachel, the ancestor? The clause is awkwardly worded, but, read by the light of the obvious intention of the testator, it is a devise of the one hundred and sixty acres of land to the son, *in trust*, for the sole and exclusive use and benefit of the daughter (a *féme covert*) for life, and after her decease, to her heirs in fee-tail. In *Ware vs. Richardson*, 3 *Md.*, 505, there was a trust for a married woman in a deed expressed in similar terms, and identical in substance and effect with the clause in question, and it was held the use was not executed in the wife and that she took merely an equitable life estate. The same construction, for the rea-

sons and upon the authorities there adduced and relied on, must be given to this will, and this excludes the operation of the rule in *Shelley's case.* No objection is made to the decree below in other respects, and it must be affirmed.

*Decree affirmed.*

(Decided 28th January, 1870.)