(Decided 17th November, 1892.)

---

Mary Elizabeth Cissell *vs.* George Columbus Cashell, and John Henson Cashell, his Trustee.

*Construction of Will—Charge of Legacy on Land—Rule in Shelley's Case.*

A testator may charge his land with the payment of legacies, if he sees fit to do so, but they are never charged unless that is his intention. And this intention must be expressly declared, or fairly and satisfactorily inferred from the language and dispositions of the will.

A testator by his will made the following devise: "I give and devise unto my son J. the one-half of a tract of land" (describing it) "in trust, nevertheless, for my son G. during his life-time.

Cissell *vs.* Cashell.

and, after the death of the said G. to the heirs of the said G., in fee simple, it being the object, purpose and intent of this trust that the said land shall be held by said trustee for the support of said G. and his family, and the said G. shall be at liberty to reside upon the same and conduct the farming operations thereon, accounting for the issues and profits of the same to the said trustee." He also gave legacies in the following terms: "I give and bequeath unto my daughters A., M. and E. the sum of two thousand five hundred dollars each, the said legacies to be paid out of my personal estate, as far as it will go, the balance, if any, to be paid to them by my three sons in equal portions." HELD:

1st. That it was clear that the testator intended that his sons should pay such portion of these legacies as should be left unpaid on account of the deficiency of his personal estate, and that G. should pay his ratable share. But, unless the land were devised to him, it could not in any way be bound for the pay ment which was to be made by him.

2nd. That the interest in the land devised to G. which was limited, both in point of estate and pecuniary value, was not enlarged by the operation of the rule in *Shelley's Case* on the remainder after his death to his heirs; because this remainder was a legal estate and could not coalesce with the equitable interest devised to G. and form one and the same estate.

3rd. That as the land could not be considered as devised to G. it could not be sold for the payment of any sum of money for which he was responsible.

4th. That as the testator had carefully provided for other interests in the land, which he evidently regarded as far more important than that given to G., and as he had not in any way connected them with the payment of the legacies, and as a sale would defeat and embarrass these interests, it would be unreasonable to infer that he intended that the land should be charged.

APPEAL from the Circuit Court for Montgomery County, in Equity.

The appeal in this case was taken from a decree of the Court below (LYNCH and VINSON. J.) dismissing the bill of complaint. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., BRYAN, FOWLER, PAGE, and MCSHERRY, J.

*Thomas Anderson,* (with whom was *Wm. Veirs Bouic, Jr.,* on the brief,) for the appellant.

*Edward C. Peter,* and *James B. Henderson,* (with whom was *George Peter,* on the brief,) for the appellees.

BRYAN, J., delivered the opinion of the Court.

We will state the proceedings in this case, so far as they are necessary to understand our opinion.

Mary E. Cissell filed a bill in equity in the Circuit Court for Montgomery County for the purpose of enforcing an alleged charge on a certain tract of land for the payment of a proportional part of a legacy. It appears that Samuel S. Cashell by his last will and testament devised lands to his sons John and Tilghman in fee simple, and that he also made the following devise : "I give and devise unto my son, John Henson Cashell, the one-half of a tract of land purchased by me from Dr. Washington Waters, on which my son, George Columbus Cashell, now resides ; said one-half of said tract containing one hundred and thirty-three and one-third acres of land, it being part of a tract called 'Charles and Benjamin,' in trust, nevertheless for my son, George Columbus Cashell, during his life-time, and after the death of the said George Columbus Cashell, to the heirs of the said George Columbus Cashell, in fee simple, it being the object, purpose, and intent of this trust that the said land shall be held by said trustee, for the support of said George Columbus Cashell and his family, and the said George Columbus Cashell shall be at liberty to reside upon the same and conduct the farming operations thereon, accounting for the issues and profits of the same to the said trustee." He also gave legacies in the follow-

ing terms : "I give and bequeath unto my daughters Achsah Ann Huguely, wife of Charles Huguely, Mary Elizabeth Cissell and Emma Rebecca Be-ll, wife of Silas A. Be-ll, the sum of two thousand five hundred dollars each, the said legacies to be paid out of my personal estate as far as it will go, the balance, if any, to be paid to them by my three sons in equal portions." The personal estate of the testator was insufficient to pay the legacies in full ; but paid a little more than one-fourth of their amount. The question in this case is whether the land mentioned in the devise just quoted can be subjected to the payment of a proportional part of the legacy bequeathed to Mrs. Cissell.

A testator may charge his lands with the payment of legacies if he sees fit to do so ; but they are never charged unless that is his intention. And this intention must be expressly declared or fairly and satisfactorily inferred from the language and dispositions of the will. There can be no doubt whatever about this general rule. *Owens vs. Clator*, 56 *Md.*, 129; *White, Ex'r, et al. vs. Kauffman, et al.*, 66 *Md.*, 89. It is perfectly clear that the testator intended that his sons should pay such portion of this legacy as should be left unpaid on account of the deficiency of his personal estate, and that George Cashell should pay his ratable share. But unless the land were devised to him, it could not in any way be held that it was bound for the payment which was to be made by him. The land is devised in distinct terms to John on a certain trust which is to continue during the life-time of George, and is then to cease ; for, after his death the devise is to his heirs. The legal estate is to go to the heirs, without being in any way affected by a trust. The latter part of the devise makes this very clear; the language is: "It being the object and purpose of this trust that the land shall be held by said trustee," that is to say, the trustee is to hold the legal estate ; now the purposes

.for which the trustee is to hold the legal estate are also clearly stated; they are "for the support of said George Columbus Cashell and his family, and the said George shall be at liberty to reside upon the same, and conduct the farming operations thereon, accounting for the issues and profits of the same to the said trustee." The interest in the land devised to George is extremely limited both in point of estate and pecuniary value.   Nor can it be said that it is enlarged by the operation of the rule in *Shelley's Case* on the remainder after his death to his heirs; because this remainder is a legal estate and it cannot coalesce with the equitable interest devised to George and form one and the same estate.   The doctrine preventing the union of legal and equitable estates is perfectly well established as a sub-division or modification of the rule in *Shelley's Case*.   As the land cannot be considered as belonging to George, it cannot be sold for the payment of any sum of money for which he is responsible.   We are not to be understood as saying that even if the land had been devised to George in fee simple that a charge upon the land could have been implied in this case; but as the testator had carefully provided for other interests in the land, which he evidently regarded as far more important than that given to George, and as he had not in any way connected them with the payment of the. legacies, and as a sale would defeat or greatly embarrass these interests, we think that it would be totally unreasonable to infer that he intended that the land should be charged.   We must affirm the decree with costs.

*Decree affirmed, with costs.*

(Decided 17th November, 1892.)