HARRIET K. HOPKINS COWMAN ET AL. *v.* CHARLES H. CLASSEN ET AL.

FLORENCE M. SNYDER *v.* CHARLES H. CLASSEN ET AL.

LAURA SHELLEN SOMERS ET AL. *v.* CHARLES H. CLASSEN ET AL.

[Nos. 45, 46, 47, October Term, 1928.]

*Decided January 17th, 1929.*

430

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Parke, JJ.

*Walter C. Mylander,* with whom was *Nathan Patz* on the brief, for the appellants in No. 45.

*Hall Hammond,* for the appellant in No. 46.

*Young, Crothers & Settle,* submitting on brief, for the appellants in No. 47.

*Luther M. R. Willis, Edward H. Burke,* and *F. Fulton Bramble,* with whom were *Randolph Barton, Jr., Hall Hammond, and Bowie & Burke* on the brief, for Charles H. Classen and others, appellees in Nos. 45 and 47.

Parke, J., delivered the opinion of the Court.

The three appeals on this record bring up for construction the will of Benjamin H. Classen, who died on June 28th, 1916. The will was made on February 6th, 1900, and on December 1st, 1906, a codicil was added that only changed one of the trustees named in the will. In the first six provisions of the will, the testator directed that his debts and funeral expenses be paid, and made gifts which are not in controversy. The questions on these appeals grow out of the seventh and, except for the appointment of executors and the formal subscription and execution, the last section of the will. This section consists of one long sentence, unbroken by punctuation, and of a short explanatory para-

graph. For the purpose of convenience the court will para- graph this sentence and place numerals and letters to indi- cate its natural divisions and subdivisions. The part of the will making this seventh disposition will then read as follows:

"Seventhly I give devise and bequeath all the rest and residue of my worldly estate (all the rest and resi- due of my property of any and every kind and descrip- tion whatsoever) and which I will for convenience here- in call my trust estate unto my dearly beloved wife Ella A. Classen and my nephew Charles H. Classen whom I will herein for convenience call my trustees in trust and confidence however for the uses intents and purposes presently herein mentioned and declared of and concerning the same

"1  that is to say in trust for the use and benefit of my said wife for and during the term of her natural life (*a*) with full power and authority in them my trus- tees hereby vested to sell and dispose of all or any part of the same my trust estate and to reinvest the pro- ceeds thereof in their names as trustee hereunder so as to hold the same the new investments under the trust hereby created the sales thus to be made by my trus- tees shall be made without risk to the purchaser or purchasers as to the application or misapplication by the Trustees of the purchase money and

"2  from and after the death of my wife then to hold the trust estate including the new investments in trust for the use and benefit of my daughter Mary Augusta for and during the term of her natural life (*b*) with full powers and authority however in her hereby vested to sell and dispose of any or all of the said trust estate without the aid of a court of equity trustee or trustees or the consent or concurrence of the present or any future husband and the proceeds thereof to apply to her own use and benefit and

"3  from and after her death then I give devise and bequeath the same (my trust estate) or so much there- of as she may not have disposed of under the powers hereby conferred upon her issue living at the time of

her death share and share alike *per stirpes* and not *per capita* but should she however die without issue living at the time of her death then and in that event

"4 one-half part thereof my trust estate or so much thereof as she may not have disposed of I give devise and bequeath to such person or persons or body corporate (*c*) as she may by her last will and testament designate or appoint and for that purpose I confer upon her the authority to make a last will and testament affecting the said one-half part and

"5 of the other half part thereof or the whole in case she shall die intestate of my trust estate or so much thereof as may have not been disposed of I direct shall be divided into six equal parts having reference to value and quantities and I give and devise and bequeath 6 two parts in six parts thereof unto the children of John H. Snyder 7 two other parts in said six parts unto Classen C. Howard and 8 one other part in the said six parts unto Margaret M. Start and 9 the remaining one part of said six parts unto Charles H. Classen

. "10 on the death of either of my trustees hereunder my wife or Charles H. Classen then shall my friend Walter M. Stromenger and Oliver A. Winchester, Jr., be appointed trustees in place of the deceased trustee but they shall not act as such trustees until they shall have given bond as may be required by the court of equity appointing them trustees.

"Whenever I have herein spoken of my trust estate I mean not only my original trust estate but I mean to include therein any new investments that may have been made by my trustees in pursuance of the power hereby conferred on them."

The codicil simply annulled the appointment of Winchester as a trustee and appointed Frederick H. Lohmeyer, the husband of his daughter, in his place.

The testator was survived by his wife, Ella A. Classen, and his daughter, Mary Augusta Classen Lohmeyer, and all the beneficiaries who were individually named in the will. The children of John H. Snyder living at the date of the will,

and at the date of the testator's death, were Edwin C. Snyder, Charles E. Snyder and Maurice Winfield Snyder. A fourth child, Wilmer H. Snyder, was long dead when the will was made, but left an only child, Florence M. Snyder, who survived the testator, who is a party to these proceedings and who, although a grandchild, claims to take under the will as a child within the meaning of the gift to the children of John H. Snyder. The wife of the testator died on May 23rd, 1927, and his daughter died without issue on January 28th, 1919. Although the daughter did not survive the mother, she made a will on January 18th, 1918, which was duly executed and admitted to probate by the Orphans' Court of Baltimore City, whereby she disposed of the estate which she had acquired by the will of her husband, who had died before her; and then, after appropriate and explicit reference to the power of testamentary disposition conferred upon her by the will of Benjamin H. Classen, her father, she proceeded in this manner:

"I do give, devise and bequeath all the property and estate belonging to the estate of my father the said Benjamin H. Classen, deceased, over which I have testamentary power of disposition and subject to the life estate of my mother Ella A. Classen, under said will, as follows:"

and then, after giving certain legacies in money, she devised and bequeathed the residue of the estate of her father over which she had the power of disposition to two tenants in common. By the fourth and final clause of her will the testatrix devised and bequeathed all the residue of her property to her mother for life and then in remainder to Harriet K. H. Cowman, and Mary B. S. White as tenants in common. It is unnecessary to set forth the further details of this testamentary disposition, and of the devolution after death of the title to the interests of several possible beneficiaries under the will of Benjamin H. Classen, since the proper representatives are parties to the cause and these details neither present any difficulties nor affect those before the court for solution.

The death of the life tenant caused the surviving trustee under the will of Benjamin H. Classen, along with a group of claimants, to file a bill of complaint against all other possible claimants in order that the court might assume jurisdiction of the trust created by the will of Benjamin H. Classen, and direct its administration in order that the real and personal property forming the trust estate should be divided among such parties as might be determined to be entitled. The parties answered, and testimony was taken, and a decree passed, assuming jurisdiction, construing the will, appointing a trustee to make sale of certain real and leasehold property not susceptible of partition, and to make a partition and division of the entire trust estate, including the proceeds of the sales, among those determined by the decree to be entitled; providing for a report of sales and of the trustee's proceedings, for the statement of an account, subject to exception; and reserving the right to pass whatever further orders might become necessary in the settlement and distribution.

The error assigned on the appeals from this decree is the construction of the will by the chancellor, and this court finds no other ground for attack. The chancellor construed the power of testamentary disposition given to the daughter to depend upon her surviving her mother; and, as she did not so survive, her attempt to exercise this power was declared void. He further held that the term "children of John H. Snyder" only included those children who might have been living at the time of the death of the testator's daughter. The effect of this construction is to treat the daughter as having died "intestate" of the trust estate, and, she not having issue living at her death, to cause the whole trust estate to vest clear of any trust but according to the specified proportions, in the parties designated under the final provision of Benjamin H. Classen's will.

The appellants are not united in their positions. It will, however, serve no useful end to treat the appeals separately, if all the questions raised are severally considered and de-

termined. The material questions are these three: first, whether under the rule in Shelley's case Mary Augusta C. Lohmeyer took a legal estate in fee simple in all of the trust property; or, if not, second, was the power of testamentary disposition given to the daughter such that she could not validly exercise the power until and unless she survived her mother; and, third, does the term "children of John H. Snyder" as used in the section of the will in controversy include a living grandchild whose father, a son of John H. Snyder, had died some years before the execution of the will of Benjamin H. Classen.

1. As the will of Benjamin H. Classen was executed before May 31st, 1912, it is unaffected by the provisions of the Acts of 1912, ch. 144, now section 342 of article 93 of the Code. So, the first question will be, Does the rule in Shelley's case apply? The following is an approved definition of the rule: "When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate." 4 *Kent's Comm.*, 215; *Cook v. Councilman*, 109 Md. 622, 639; *Travers v. Wallace*, 93 Md. 507, 512-513; *Henderson v. Henderson*, 64 Md. 185, 190; *Stump v. Jordan*, 54 Md. 619, 627, 628; *Ware v. Richardson*, 3 Md. 505, 544. The rule accordingly requires that the interest of the ancestor and of the heirs must be "of the same legal or equitable quality." Consequently, if the estate limited to the ancestor is an equitable estate and the estate limited to the heirs is a legal estate, or if the estate limited to the ancestor is a legal estate and that of the heirs is an equitable estate, the two estates will not coalesce in the ancestor. The two estates must be both legal or be both equitable, for if one be legal and the other equitable the rule will not apply. *Ware v. Richardson*, 3 Md. 505, 545; *Griffith v. Plummer*, 32 Md. 74, 77; *Handy v. McKim*, 64

Md. 560; *Horne v. Lyeth,* 4 H. & J. 431, 435; *Browne v. Trustees,* 37 Md. 108, 120, 121; *Goldsborough v. Martin,* 41 Md. 488, 503; *Shreeve v. Shreeve,* 43 Md. 382, 394; *Brown v. Renshaw,* 57 Md. 67, 78; *Cissel v. Cashell,* 76 Md. 330, 334; *Mercer v. Hopkins,* 88 Md. 292, 309, 310-313; *Mercer v. Safe Deposit Co.,* 91 Md. 102, 117; *Preston on Remainders,* 321; *Jarman on Wills,* 335; *Fearne on Remainders,* 52-60.

The will at bar gives the legal title in the real and personal property to trustees for the period of the lives of Ella A. Classen, the widow, and Mary Augusta C. Lohmeyer, the daughter, or that of the survivor of them; and at the death of the daughter unto her issue living at the time of her death, *per stirpes* and not *per capita.* During this period of the trust, the trustees had active and important duties to perform, with a large measure of discretion and authority committed to them by the will; and these duties the trustees could not discharge without holding the legal estate. It follows that the legal estate was not executed in the life tenants by the Statute of Uses, and that the life tenants did not take legal estates. At the time the will created a legal estate in the trustees for the lives of the mother and daughter or of the survivor, with remainder to the issue of the daughter living at the time of her death, *per stirpes* and not *per capita,* the will, also, created an equitable life estate in the mother and an equitable life estate in the daughter from and after the death of her mother.

So, if the word "issue" be regarded as a word of limitation and not a word of purchase (*Miller on Construction of Wills,* secs. 89, 90), the remainder to the daughter's issue would mean a remainder to the heirs of her body, and would create an estate tail which our statute converts into a fee simple estate in the issue, so the rule in Shelley's case would not apply, since the estate of the ancestor is equitable and that of the issue or heirs of her body is legal. *Supra;* and *Dickson v. Satterfield,* 53 Md. 317, 320, 321; 2 *Jarman, Wills,* 417; *Chelton v. Henderson,* 15 Md. 191, 193; Code, art. 21, sec. 25; *Tongue v. Nutwell,* 13 Md. 424; *Thomas v. Higgins,* 47

Md. 452; *Estep v. Mackey,* 52 Md. 599; *Benson v. Linthi-cum,* 75 Md. 144.

Since the rule in Shelley's case did not apply, no part of the trust estate created by the will of Benjamin H. Classen passed to the appellants, Harriet K. H. Cowman and Mary B. S. White, as legatees and devisees under the fourth and residuary clause of Mary A. C. Lohmeyer's will.

2. At the time of the death of Benjamin H. Classen, his wife and his daughter both survived, and the legal title to the realty and personalty vested under the will in his testamentary trustees for the period of the trust, which was to continue until the death of the survivor of his wife and daughter.

The mother took an equitable life estate and the daughter an equitable life estate in remainder. The fact that, with this equitable life estate in remainder in the daughter, were coupled a power in the equitable life tenant to convert all or any part of the trust estate to her own use and benefit, and a further power to make a testamentary disposition of one-half of the entire trust estate remaining at her death, if she should die without issue living at the time of her death, did not give her a fee simple estate in the realty and an absolute estate in the personalty. The rule was stated for this court by Judge Alvey in *Benesch v. Clark,* 49 Md. 495, at p. 505:

"Now it is quite clear upon all the authorities, that where an estate is given to a person generally or indefinitely, with power of disposition, such gift carries the entire estate, and the devisee or legatee takes, not a simple power, but the property absolutely. But when the property is given, as in this case, to a person expressly for life, and there be annexed to such a gift a power of disposition of the reversion, then the rule is different, and the first taker, in such case, takes but an estate for life, with the power annexed; and if the person so taking fails to execute the power and thus dispose of the reversion, it goes, where there is no gift or devise over, to the heir or next of kin of the testator, according to the nature of the property.

"This distinction, while it has been said to be a refined one, is, nevertheless, as well established as any in the law;

and judges and text-writers alike recognize and adopt it as a principle too firmly settled to be questioned." *Foos v. Scarf,* 55 Md. 310; *Mines v. Gambrill,* 71 Md. 35; *Smith v. Hardesty,* 88 Md. 390; *Welsh v. Gist,* 101 Md. 608; *Roberts v. Roberts,* 102 Md. 147; *Marden v. Leimbach,* 115 Md. 206, 210; *Brandau v. McCurley,* 124 Md. 250.

The remainder to the daughter was not made contingent either by its being subject to a precedent equitable life estate in the mother, since the possibility that the remainder may never take effect in possession is immaterial; or by the granting to the daughter of a power whose exercise might terminate her life estate. So the daughter took an equitable life estate, which vested in interest under the will at the death of the father and testator, and which would vest in possession upon the daughter surviving the mother, in whom the particular precedent equitable life estate had vested in right and possession at the death of the testator. 1 *Tiffany on Real Property* (2nd Ed.), sec. 137; *Kemp v. Bradford,* 61 Md. 330, 335; *Roberts v. Roberts,* 102 Md. 131, 147-149; *Ridgely v. Cross,* 83 Md. 161, 171, 172.

While the will created two successive equitable life estates, and provided for the continuance of the legal title in the trustees of an active trust until the death of the survivor of the two life tenants, it is clear that the subsequent estates were not to arise upon the termination of the latter of two successive equitable life estates but upon the death of the daughter, whether her death took place in the life time of the first life tenant, when her life estate in remainder was vested in interest, but not in possession, because she had then a present fixed right of future, but not of present, enjoyment; or whether her death happened after the expiration of the precedent particular life estate in the mother, when her life estate was both vested in interest and in possession.

If we ignore the trust estate created by the will, and treat, for the moment, the life estates as legal estates, the daughter never was seised of the freehold. *Tiffany on Real Property* (2nd ed.), section 14. Nor could the testator be held to have

contemplated that she would only be so seised as a condition precedent to the gift over, because it was limited upon her death and not upon the termination of a life estate of which she should be seised. When the daughter died, the seisin of the freehold estate was in the mother, who held it in her own behalf and in behalf of those who were to take in remainder; and here the gift over, without any shifting of the seisin between others in remainder or reversion, took effect without the seisin or immediate freehold ever being in abeyance, because the freehold was not left without a tenant in possession "against whom an action concerning the land could be brought, who could meet adverse claims thereto, and who could render the feudal services to the lord" which might have been required in feudal times. *Tiffany on Real Property* (2nd ed.), sec. 140; *Challis on Real Property* (2nd ed.), 109, 110. So, on principle, it would seem that the gift over should not fail by reason of the failure of the particular freehold estate in the daughter to vest in possession; but that problem is not involved in the present case, as the legal estate was devised to trustees and outstanding at the death of the daughter, and the contingency that, under the rules of the common law, the remainder may never become an estate because of its failure to vest during or at the termination of the particular estate, has no force with respect to equitable remainders, since the seisin is continuously in the trustees during the successive life etates. *Fearne's Cont. Rem.*, 303, 304; *Tiffany on Real Property* (2nd ed.) secs. 140, 144; *Theobold on Wills* (7th Ed.) 650; *Challis on Real Property* (2nd ed.) 111, 130-135; *Hopkins v. Hopkins,* 1 Atk. 581, West 606; *In re Eddel's Trust,* L. R. 11 Eq. 559; *Berry v. Berry,* 7 Ch. Div. 657; *Astley v. Micklethwait,* 15 Ch. Div. 59; *Chapman v. Blisset,* Cas. T. Talb. 145; *Abbiss v. Burney,* 17 Ch. Div. 211, 229; *Marshall v. Gingell,* 21 Ch. Div. 790; *Re Brooke, Brooke v. Brooke* (1894) 1 Ch. 43. Compare *Conner v. Waring,* 52 Md. 724, 734.

The remainders limited upon the death of the daughter were two alternate contingent remainders. The first was the gift in remainder to the issue of the daughter who may be

surviving at her death, which was a future event, and was contingent, because at the death of the testator the daughter had no issue; and, also, because any issue born to her before the termination of the particular life estate by her death would be subject to the letting in or out, by subsequent birth or death, of such issue, so that the remaindermen could not be ascertained until the termination of the particular estate by her death. 1 *Tiffany on Real Property*, sec. 136 (b); *Mercantile Trust & Deposit Co., v. Brown*, 71 Md. 166; *Small v. Small*, 90 Md. 550; *Miller on Construction of Wills*, p. 596, sec. 222, p. 614.

The second alternate contingent remainder was that, in the event the daughter should die without issue living at her death, then the entire estate in trust was absolutely given in certain designated proportions to Classen C. Howard, to Margaret M. Start, to Charles H. Classen and to the children of John H. Snyder, subject to the power of the daughter, Mary A. C. Lohmeyer, to make a testamentary disposition of the one-half of the whole of the property so given. This gift over, subject to the testamentary power in Mary A. C. Lohmeyer, was a contingent remainder because, although limited by the will to certain persons, their right to the estate depended upon the contingent future event of Mary A. C. Lohmeyer dying without issue living at her death. *Miller on Construction of Wills*, sec. 212; *Tiffany on Real Property*, sec. 135, pp. 480, 481.

By the dying of the daughter without issue living at her death, the second alternative contingent remainder took effect, and the whole estate passed thereby, unless the will of the daughter was a valid exercise of the testamentary power of distribution. The daughter was given two powers. The first bestowed, was to sell and dispose of any or all of the trust estate for her own use and benefit. It was a power which obviously began with, was incident and appurtenant to, and continued during, her possession of the equitable life estate. It was a power which could not be executed either before or after the purposes for which the power was given. *Thom v. Thom*, 101 Md. 444, 452. No question arises under this power, since the daughter never attempted to exercise it.

The second power depended upon the contingency of the daughter dying without issue living at her death. According to the explicit terms of the will, the sole conditions for the valid exercise of the power were that she die without issue, that the power be executed by means of a will, and that its scope be limited to one-half of the remaining trust estate. All these conditions were fulfilled, but the exercise of the power is said to be invalid because the donee of the power was never vested in possession of the life estate, having died without issue surviving during the lifetime of the first life tenant. There is no such condition imposed in terms by the will or reasonably inferred from its provisions. The testator looked forward to two possible contingencies. The one more probable to ensue was that the life estate of the mother would be followed by the life estate of the daughter; and the second one, which could naturally happen, although not so likely as the first contingency, was the death of the daughter before the mother. So, when he created the power of testamentary appointment in the daughter, the testator, contemplating that either of said contingencies might occur, provided for both by declaring the subject of the power of appointment to be "one-half part thereof my trust estate or so much thereof as she may not have disposed of" under the power of sale and conversion to her own use if and while she were seised of the life estate. These provisions of the will can have no other significance. They do not warrant the inference, when considered in connection with the other provisions, that the testamentary power was conditioned on the vesting in possession of the daughter's life estate. *Miller's Construction of Wills,* secs. 248, 249, 250, 253, 254, 255. A power is not an estate. If the testator had intended to limit the general power given to its exercise when the daughter was in possession by reason of having survived his wife, he should have so declared, as the cases illustrate is commonly done. The gift over is not upon the contingency that she survive her mother, but upon the daughter dying without issue living at her death; and the right of the remaindermen to more than one-half of the estate hinges, not on her having

442

survived her mother, but upon the additional contingency that the daughter should die without having executed the power in her own lifetime by a will which would be operative at her death. So, the exercise of the power of testamentary disposition was not contingent upon the vesting in possession or the termination of an estate, but was made solely dependent upon the contingency of the donee dying without issue living at the time of her death. It was a general power, presently given to a designated person, and the contingency upon which it was to arise could not be finally ascertained until the donee's death, and, necessarily, the will by which the power was to be exercised had to be executed during the lifetime of the donee and, so, before the contingency upon which the power depended could be made certain.

The donee had at the least the power from the time when the power was given until her death in which to execute it by will, and this involved the privilege of revoking it by will, and making a fresh testamentary disposition up to the time of her death, since the testamentary execution is ambulatory until the death of the donee, and would be operative only if effective at the time of her death, when the appointments made would relate back to the instrument which created the power and the property given would pass, not under the will of the donee, but directly from the donor, as if the power and the will of the donor were incorporated in one instrument. *Miller's Construction of Wills,* secs. 260, 267; *Baltimore v. Williams,* 6 Md. 235, 261, 262; *Wilks v. Burns,* 60 Md. 64, 70, 73; *Marlborough v. Godolphin,* 2 Ves. 76; *Southly v. Stonehouse,* 2 Ves. 612; *Lisle v. Lisle,* 1 Bro. C. C. 533.

It seems settled law that where the authority to execute a power is dependent upon a contingent event, it may be exercised before the happening of the contingency, and the execution will be valid when the contingent event subsequently occurs; and this is unquestionably true, from the necessity of the case, when the happening of the event cannot be ascertained until the moment of the donee's death, as when the event is the dying of the donee without issue living at his death. *Wandesforde v. Carrick,* Ir. Rep., 5 Eq. 486;

*Ashford v. Cafe,* 7 Sim. 641, 58 Eng. Rep. 984; *Bradley v. Bury,* 10 Jur. (N. S.) 937; *Martin v. Kelso,* 5 W. R. 440; *Dolby v. Pullen,* 2 Bing. 144, 130 Eng. Rep. 261; *Sutherland v. Northmoor,* 1 Dick. 56, 21 Eng. Rep. 188; *Machir v. Funk,* 90 Va. 284; *Re Coulman, Munby & Ross,* 30 Ch. Div. 186, 188; *Logan v. Bell,* 1 C. B. 872, 135 Eng. Rep. 786. See *Benesch v. Clark,* 49 Md. 495, 505, 506; *Lindsley et al. v. First Christian Society,* 37 N. J. Eq. 277; *Bundy v. U. S. Trust Co.,* 257 Mass. 72; *Theobald on Wills* (7th ed.) 85; 1 *Sugden on Powers,* 332, 335, 338, 339.

It was said by Sugden of *Sutherland v. Northmoor, supra,* that "the point decided by the case is that if a power is to arise upon two contingencies, one of which may not be capable of being ascertained until the death of the donee of the power, it is competent to the donee to exercise it during his life, although neither of the contingencies has happened," pp. 332-333. So, where a power of appointment is given to one life tenant whose estate is to vest in possession after the expiration of a precedent life estate in another, the donee, whose life estate is vested in interest but not in possession, may execute the power during the life of such first life tenant. *Supra.*

The case of *Thom v. Thom,* 101 Md. 444, does not control the present appeal. In that case the grantor in 1853 conveyed land in trust for the use of the grantor's daughter and husband during their joint lives, and, after the death of either, then in trust for the survivor, with power to such survivor of testamentary disposition of the trust estate among the children or descendants of the spouses, and with power to the equitable life tenants, or their survivor, subject to a specified consent of the grantor and others, of sale for the purpose of conversion and investment; and from and after the death of the survivor of the spouses, and in default of the execution of the power of appointment, then in further trust for such of the children and descendants of the life tenants as may then be living in accordance with the terms of said trust, until every one thereof shall attain the age of twenty-one years, when each child or descendant would receive the

proper share discharged of the trust. But if there were no children or descendants of the spouses living at the death of the survivor of the original life tenants, or if there be children under age and all die in their minority, then over in trust for the grantor for life, with power to him to make a testamentary disposition of the trust estate among his children or descendants; and, in the event of his dying without exercising this power, then over in trust for a second daughter for life, with like power to appoint the trust estate by will among the heirs of the grantor, and, in default of the appointment by her, then in trust for such persons as would be by the then existing laws the heirs at law of said grantor.

In the year following this settlement the grantor made a will, and within a few years added three codicils, and died in 1864. The daughter survived her husband and died in 1902, without leaving issue, and the legal complications under this will came before this court a few years after the daughter's death. An attempt was made to have the will and codicil of the settlor declared an execution of the power of testamentary disposition given to the settlor. The Act of 1888, ch. 249 (Code, art. 93, sec. 339) had no application and there was nothing whatever in the will or codicils from which an execution of the power could possibly be found. P. 452. The court might well have rested its decision on this decisive point, but it proceeded to determine whether, when the grantor or settlor made the will, the power for him to make a testamentary disposition had arisen, and this court determined that "by every fair inference from, or construction of the instrument containing the power the same was conditional and only to be exercised in circumstances that never transpired. This is shown by the connection in which the power is conferred. Upon the happening of the contingencies expressed in the deed the property therein described is to be held in trust for the grantor for life. This equitable life estate was not to accrue, of course, until the contingencies provided for should happen. The power is coupled with the life estate and the evident reason for giving the power is that in conditions that would then exist it would be necessary to

make further disposition of the property if the grantor should then have a further wish as to a particular disposition. * * * It was one of a succession of powers each to be exercised upon the happening of a certain specified contingency" (page 454). The daughter, one of the first life tenants, survived her husband and died in 1902, but her father had died in 1864, so the "circumstances that never transpired" were that the life estate of the father never vested even in estate. It appeared to have been the general design of the settlement that the exercise of the successive powers of testamentary disposition was expectant upon the origin of the successive estates upon which they were attendant, and that until such respective estate came into being the particular power coupled with that estate did not come into being. The power to the settlor was not presently given, and was not to arise until a future or contingent event might happen, that is, the possibility of a future life estate vesting in possession in the settlor. So, the court here rightly held the power in the settlor had never come into existence, and, so, could not have been exercised until his life estate began. Pages 454, 455; 23 *Halsbury's Laws of England,* p. 21; *Tiffany on Real Property* (2nd. Ed.), sec. 325, p. 1087.

The facts in *Thom v. Thom, supra,* are distinguished in other respects from those on the present record, but the statement of this case and the preceding discussion will show that the rule enforced on that appeal is not applicable to the will at bar.

As we construe the will of Benjamin H. Classen, the power was created thereby, and could be exercised in the lifetime of the first life tenant, although the exercise of this power could have no operation unless and until the death of the daughter without issue surviving; and that the testamentary disposition by the daughter was, subject to the life estate of the mother, valid to the extent of one-half of the estate held in trust; and that the other one-half vested in the parties to whom the decree of the chancellor erroneously adjudicated the whole. *Addison v. Bowie,* 2 Bland 618.

446

3. The remaining question is, Was it the intention of the testator, Benjamin H. Classen, to include in the gift of the one-third part of the one-half of his estate formerly held in trust to "the children of John H. Snyder" a granddaughter, who was living at the time the will was made and is now surviving, but whose father had died some years before the testator. There were children of John H. Snyder in existence at the time of the making of the will and at the death of the testator. The conclusion of the chancellor that the grandchild did not take anything under the will is sound.

The legal meaning of "children" is in agreement with its popular use, and embraces immediate offspring and not more distant descendants. The gift here is not immediate, but is to take effect in possession upon the death of a third party without leaving issue at her death. There being no different intention disclosed by the will, the rule is that the children of A, living at the death of the testator, together with those who happen to be born before but not after the happening of the contingency upon which the gift takes effect in possession, who are alive when the contingency happens, are the ones entitled. *Martin v. Cook,* 129 Md. 195; *Lee v. Waltjen,* 141 Md. 458, 460; *Tiffany on Real Property,* sec. 139, p. 498; *Swift v. Cook,* 133 Md. 652; *Demill v. Reid,* 71 Md. 175; *Miller's Construction of Wills,* secs. 86-87.

For the error in not giving effect to the execution of the testamentary power given to Mary A. C. Lohmeyer, the decree appealed from will be reversed in part.

> *Decree in Nos. 45, 46 and 47 affirmed in part and reversed in part and cause remanded for the passage of a decree in conformity with this opinion, and for further proceedings thereunder. The costs of these proceedings to be paid out of the general fund for distribution.*