(Nos. 40859, 40861, cons.—)
Marie-Louise Rosenthal, Appellee, *vs.* The First National Bank of Chicago, as Trustee, *et al.*—(Phyllis S. Dreyfus *et al.*, Appellants.)

*Opinion filed May 29, 1968.—Rehearing denied Sept. 24, 1968.*

MORGAN, HALLIGAN, LANOFF & COOK, of Chicago, (SAMUEL M. LANOFF and JOHN A. COOK, of counsel,) for appellants.

EMANUEL MORRIS, of Chicago, guardian *ad litem,* for appellant Diane E. Dreyfus.

SONNENSCHEIN, LEVINSON, CARLIN, NATH & ROSENTHAL, of Chicago, (DAVID LEVINSON, EDWIN A. ROTHSCHILD, and JOEL F. HENNING, of counsel,) for appellee Marie-Louise Rosenthal.

FRANK D. MAYER, GEORGE V. BOBRINSKOY, JR., and BURTON E. GLAZOV, all of Chicago, (MAYER, FRIEDLICH, SPIESS, TIERNEY, BROWN & PLATT, of counsel,) for appellee Michael Reese Hospital.

ROBERT S. CUSHMAN and BENNO P. LUDWIG, both of Chicago, (SPRAY, PRICE, HOUGH & CUSHMAN, of counsel,) for appellee First National Bank of Chicago.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

This is a suit brought in the circuit court of Cook County to construe the will of Moise Dreyfus. He died in 1937, leaving a widow and two children, a daughter and son. By his will a separate trust was set up for each child under which income was payable to the widow for life and then to the particular child for life, with remainder to be distributed as the child should appoint by will. In default of appointment the remainder was to go to his or her children. The widow was also given authority to direct by will a distribution of the trusts or either of them to the son and daughter or either of them.

The son, Philip Dreyfus, died during his mother's lifetime and left a will in which he purported to appoint the remainder of his trust to the Michael Reese Hospital. The principal question is whether the appointment was effective, in view of the fact that he predeceased the widow. The circuit court decided that Philip's appointment failed and that the remainder went by the widow's direction to her daughter Marie-Louise. The appellate court reversed, holding that the power was validly exercised. (*Rosenthal* v. *First Nat. Bank,* 88 Ill. App. 2d 82.) The cause is here for further review on leave to appeal.

The two equal trusts established by the testator's will are designated therein as the "Philip Trust" and the "Marie-Louise Trust." The terms of each are identical with those of the other, but only the Philip trust is involved here. Under its terms the widow receives from net income the sum of $2500 per year plus whatever additional the trustees consider desirable for her care and maintenance. Philip was to receive the balance of the income during her

lifetime and all of it thereafter (in case she did not exercise a testamentary power, hereinafter mentioned, to direct distribution of the trust upon her death). Thus the ninth article declares in part "in the event that my said wife shall survive me and shall fail to direct the distribution upon her death of said trusts, or either of them, then my said trustees shall thereafter hold and dispose of the trust or trusts not so directed to be distributed, in the following manner, to-wit: (a) during each and every year ensuing subsequent thereto and prior to the death of said Philip S. Dreyfus, the income of the Philip Trust shall be distributed quarterly or oftener in the discretion of said Trustees to said Philip S. Dreyfus, together with so much of the principal thereof as in the sole discretion of said Trustees they may deem it advisable or expedient so to distribute."

The disputed provision then appears as follows: "Upon the death of said Philip S. Dreyfus, the principal, or so much thereof as may at such time remain in the hands, custody and control of said Trustees, together with any accumulated income, shall be divided and distributed as said Philip S. Dreyfus may by his Last Will and Testament validly appoint, and in default of appointment, to the lawful issue of said Philip S. Dreyfus surviving at the date of his death, share and share alike, per stirpes and not per capita."

Philip died in 1961, prior to the death of the widow, who lived until 1963. Following the widow's death the daughter Marie-Louise instituted the present suit, alleging a right to the Philip Trust under a purported exercise of the power which the testator's will had conferred on the widow to direct by will the distribution of the Philip Trust and the Marie-Louise Trust or either of them "to said Philip S. Dreyfus and said Marie-Louise Rosenthal, respectively, or either of them." The widow in her will had purported to appoint the principal of the Philip Trust to Marie-Louise under certain contingencies and the circuit

court held the appointment valid under the power granted to her in her husband's will. The appellate court disagreed, however, determining that under a proper construction of the testator's language the widow could direct distribution of the Philip Trust only to Philip and had no power to cross-appoint to Marie-Louise.

In answer to the petition for leave to appeal she acquiesced in the appellate court's decision, indicating that she desired to carry out the testamentary wishes of her mother and brother to have the trust estate distributed to the hospital. The widow's purported appointment directed that distribution to Marie-Louise be made only in the event that Philip's appointment to the hospital would be held invalid. In view of our conclusion it will be unnecessary to determine whether the widow had power to cross-appoint. Even if existence of the power is granted she expressly refrained from exercising it in the event, as we now hold, that Philip's exercise of his power of appointment validly entitled the hospital to receive distribution.

To reverse the appellate court it is argued on behalf of the remaindermen that Philip's power to appoint depended upon his surviving his mother, and that since he failed to do so the power never became operable and the property went to them in default of appointment. In support of their claim that the power was intended to be effective only if Philip survived they point to the fact that insofar as the income is concerned the testator expressly provided for the case of Philip predeceasing his mother. Thus the seventh article of the will, after providing for the payment of $2500 annually to the wife from the income of each trust, with the balance to the children respectively, continues as follows: "and if my said son Philip S. Dreyfus and my said daughter Marie-Louise Rosenthal, or either of them, shall die prior to the date of the death of my said wife, then such balance, if any, shall, until the date of the death of my said wife, be paid over and delivered to such persons and in such

proportions as such Philip S. Dreyfus and said Marie-Louise Rosenthal may by their respective last wills and testaments validly appoint, and in default of such appointment, to the lawful issue of said Philip S. Dreyfus and said Marie-Louise Rosenthal, respectively, surviving at the date of their deaths, share and share alike, per stirpes and not per capita." The argument is that this shows the testator considered the possibility that Philip might die before his mother and that since the testator knew how to provide for a power in Philip to appoint in that case the implication is that he intended to create a different result by omitting similar language from the ninth article, dealing with distribution of principal.

We cannot accept the argument. A more reasonable inference is that since the principal could not be distributed until the survivor's death it was necessary to provide for disposing of the income balance in the interim. A gap would otherwise exist in distributing the income balance between the time of Philip's death and the date of his mother's death. Corresponding provisions were not necessary with respect to principal, where continuity of payments is not involved but only a distribution, and where nothing would be left undisposed of as it would be in the case of income payments.

It is further contended that the ninth article of the will is concerned only with rights and powers which arise subsequent to the widow's death. Relied upon is language providing that in case she fails to direct distribution "upon her death," then during each and every year "subsequent thereto and prior to the death" of Philip the income should be paid to him, and that "upon the death" of Philip the principal shall be distributed as he might by will appoint. It is said that the testator was clearly considering Philip alive and surviving his mother, and that the testator's plan was to avoid giving Philip any rights until his mother's death.

We cannot agree. The language referred to relates to

the matter of distribution, either of income or of principal. Although distribution of the principal would have to be postponed until the widow's death, this would in no way prevent the interest of the hospital, as Philip's appointee, from vesting at the time of his death. In other words, the fact that Philip's exercise of his testamentary power of appointment could not immediately vest his appointee in possession, where he died prior to expiration of his mother's life estate, provides no basis for inferring an intention that he must survive her as a condition for the existence of the power. His appointment by will created an immediate vested remainder in the hospital, possession only being postponed because of the life estate. (*Cf. Whittaker* v. *Porter*, 321 Ill. 368, 377.) The testator said in unequivocal language that the principal "shall be divided and distributed as Philip S. Dreyfus may by his Last Will and Testament validly appoint." The power was not in terms made dependent upon whether or not he survived his mother, and such a requirement will not be inferred in the absence of language clearly implying it. (See 2 *Simes & Smith, Future Interests* (2d ed., 1956), p. 11, sec. 576.) In the ninth article of the will the testator expressed but one condition which could nullify distribution pursuant to Philip's exercise of his power of appointment, and that was in the event his mother exercised her power to direct distribution, given to her by article eight of the testator's will. If the testator had intended Philip's power to be subject, in addition, to the condition that he survive his mother the testator could easily have used appropriate language to express it. This he did not do. The provisions concerning life income as well as those relating to the distribution of the corpus indicate that distribution was to take effect on the death of the survivor of the widow and Philip, and that he could exercise his power of appointment by will even though the widow's death without exercising her testamentary power of direction had not yet occurred. Then, when she did subsequently die without exer-

cising her power. Philip's appointment became effective in possession. No convincing reason has been suggested why the disposition of the corpus in accordance with Philip's appointment should depend upon the fortuitous circumstance of the order in which he and his mother would die. His power to appoint is expressed in plain and unconditional language, and the court will not read into it a condition that he survive his mother in order to make effective his power of appointment.

Although we have found no Illinois decision exactly in point, several cases have been presented elsewhere of successive life estates in which the secondary life beneficiary having a testamentary power to appoint the remainder exercises it before expiration of the primary life estate. In such cases it has been held repeatedly that in the absence of some manifestation of opposite intent it is immaterial whether the appointment occurs before or after expiration of the primary life estate. The appointment takes effect subject, of course, to the outstanding life estate in the widow. (*Bankers Trust Co.* v. *Variell,* 143 Conn. 524, 123 A.2d 874; *Cowman* v. *Classen,* 156 Md. 428, 144 Atl. 367; *Lindsley* v. *First Christian Society in Camptown,* 37 N.J. Eq. 277; *In re Merseles' Will,* 161 Misc. 454, 292 N.Y. Supp. 276; *In re Carroll's Estate,* 153 Misc. 649, 275 N.Y. Supp. 911.) The appointee takes as a remainderman in the same manner as he would have taken had he been expressly named as remainderman in the donor's will. *In re Merseles' Will,* 161 Misc. 454, 292 N.Y. Supp. 276.

In the *Lindsley* case the testator, after creating a life estate in his widow, provided that upon her death the property was to go to his daughter for her lifetime, with such property as remained at the daughter's death to be disposed of in accordance with her will. It was further provided that if the daughter died without leaving a will then the remainder was to be distributed to her children. The daughter predeceased the widow leaving a will appointing

the property. In holding that the property passed pursuant to her exercise of the power, the court said: "There is nothing in the testator's will to indicate an intention to engraft a limitation upon the power that it shall be contingent upon the survival of Mary. The gift over is made only in the event that she fails to exercise the power in her lifetime, and not upon the contingency that she shall survive her mother. The testator's intention clearly was that his daughter should have the absolute power of disposition of his estate subject only to the provision for his wife; that she should at least so far enjoy it as to be permitted to make a testamentary disposition of it."

In *Cowman* v. *Classen*, 156 Md. 428, 144 Atl. 367, a testator left property in trust for his wife for life and then for his daughter during her lifetime. It was further provided that "from and after her death then I give devise and bequeath" the trust estate to her issue, and in case of her death without issue "then and in that event" one half of the trust estate was to go to whomever she might appoint by will. The daughter died without issue and prior to the widow's death, leaving a will in which she purported to exercise the power of appointment.

In a proceeding to construe the father's will it was contended that the power was invalid because the daughter never became vested in possession, having died during the widow's lifetime. The court rejected the contention, saying (144 Atl. at 373): "There is no such condition imposed in terms by the will or reasonably inferred from its provisions. The testator looked forward to two possible contingencies. The one more probable to ensue was that the life estate of the mother would be followed by the life estate of the daughter; and the second one which could naturally happen, although not so likely as the first contingency, was the death of the daughter before the mother. * * * If the testator had intended to limit the general power given to its exercise when the daughter was in possession by reason

of having survived his wife, he should have so declared, as the cases illustrate is commonly done. The gift over is not upon the contingency that she survive her mother, but upon the daughter dying without issue living at her death; * * *."

In *Bankers Trust Co.* v. *Variell,* 143 Conn. 524, 123 A.2d 874, the testator created a trust for the benefit of his widow for life and then for his daughter, with a general power in the daughter to appoint the remainder by will, in case she shall have married but leave no issue surviving her. The daughter did die without issue, leaving a will in which she appointed to her husband. The husband died two years later but the testator's widow lived for some 25 more years. In an action to determine the validity and effect of the exercise of the power it was claimed that the husband's death prior to expiration of the widow's life estate defeated the exercise of the power of appointment. It was held, however, that his interest vested upon the death of the testator's daughter, subject to the life use in the testator's widow, and that the residue should be distributed to his estate. The court observed that "The power of appointment contained in the testator's will is conferred in broad and general terms" and that the will, when read in its entirety, manifested no intent that the happening of this contingency should defeat the power of appointment. (123 A. 2d at 877.) A similar result must follow in the case at bar, since no contrary intent appears from the provisions of the testator's will.

The remaindermen claim that the presence of spendthrift provisions is some indication that Philip was to have no right to appoint until after the death of his mother. Also urged, among others, are the propositions that ambiguities should be resolved in favor of grandchildren over a stranger charity, that the remainder in them became vested at the time of their birth, subject to being divested by a valid exercise of Philip's power of appointment, and that the life estates with remainders to grandchildren formed the testa-

tor's basic estate program, with the powers of appointment being of secondary importance. We have thoroughly considered the contentions but agree with the appellate court that they must be rejected. The spendthrift clause shows no intention one way or the other as to whether Philip's power to appoint survived his mother's death. As to the remainder in default of appointment, it was to Philip's issue "surviving at the date of his death" and is obviously a contingent remainder, not a vested one. (*Kost* v. *Foster,* 406 Ill. 565. 569.) The remaining rules and propositions invoked are not of sufficient application to warrant further discussion, and it would unduly prolong this opinion to do so.

In construing a will, the intention of the testator controls and if his intention can be ascertained from the words used, this intention will be carried into effect unless contrary to public policy or some fixed rule of law. It is the intention expressed, and not that which is presumed to have been in his mind, which is controlling. (*McDonough County Orphanage* v. *Burnhart,* 5 Ill.2d 230.) Unless more is shown than appears in this case the court is not at liberty to read words of condition into unconditional provisions. (*Cf. Peters* v. *Gebhardt,* 6 Ill.2d 534.) A careful examination of the testator's will discloses an expressed intention that his widow have a life estate in the Philip Trust if she desired and that upon the ultimate termination of the trust the remainder was to be disposed of in accordance with Philip's desires.

The appellate court reached the correct result and its judgment will therefore be affirmed.

*Judgment affirmed.*