In re ESTATE OF COLBA GHER FENTON, Deceased.—(Robert Vernon Beaver et al., Respondents-Appellants, v. Franklin E. Fenton et al., Petitioners-Appellees.)

Fifth District   No. 81—475

Opinion filed August 23, 1982.—Rehearing denied September 17, 1982.

J. Phil Gilbert, of Gilbert & Gilbert, of Carbondale, and James L. Karraker, of Anna, for appellants.

William L. Broom III, of Barrett, Morris & Broom, of Carbondale, for appellee Franklin E. Fenton.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Petitioner, Franklin E. Fenton, executor of the estate of Colba Gher Fenton, deceased, brought this action in the circuit court of Jackson County seeking a construction by the court of a provision of the will bequeathing the decedent's securities to named nieces and nephews. By its judgment, the trial court found, in part, in favor of the construction sought by the legatees under the provision of the will and, in part, in favor of the construction sought by two of decedent's heirs not named in the will. Robert Vernon Beaver and Shirley Karraker, heirs of decedent, appeal.

The following issues are raised on appeal: whether the trial court

erred in construing the term "securities" as intended by decedent to pass certificates of deposit and whether the doctrine of equitable apportionment should be applied between the testate and intestate assets of decedent in the payment of the expenses of administration and taxes.

Decedent died on November 18, 1980, at the age of 76 years. Her will, which was executed on November 1, 1978, was prepared by a law student in conjunction with a senior citizen's project on estate planning. The will contained 11 sections. In sections 3, 4, 5 and 8, decedent's household furniture was bequeathed. Her house was devised in section 7. Section 9 of the will provided for the disposition of the balance due on two contracts for the sale of real estate. Section 6 of the will provided the following:

"I hereby give and bequeath my securities to my nieces and nephews, Tilbert F. Henderson, Genevieve Lowry, Hazel Redcloud, Ray Lee Beaver, Robert E. Beaver, Ralph Beaver, Joy Harris, Darlene McNeil, and Judy Hall, or to the survivors of them, equally, per capita."

The will did not contain a residuary clause.

Sections 1 and 2 of the will contained directions to the executor regarding the decedent's burial and the payment of debts and expenses of administration. Section 10 contained the requirement that a legatee survive decedent by four months in order to take under the will. Section 11 named the executor, enumerated his powers and provided that all taxes

"Shall be paid and discharged by my Executor as part of the expenses of the administration of my estate, so that the legatees, beneficiaries or devisees herein shall receive their respective legacies, bequests or devises without deduction of, or liability for, any such taxes, duties or charges."

At the time of her death, the decedent's estate was valued at about $175,000 and consisted primarily of savings accounts, checking accounts and certificates of deposit held at several financial institutions located in Carbondale, Illinois, which in sum totaled about $119,000. Also included in the estate were United States Government Series "E" bonds valued at about $26,200. Decedent's home and its furnishings were valued at about $23,400. The balance due on the contract for the sale of real property was valued at about $5,800. Finally, two life insurance policies payable to the estate were valued at about $500.

Two separate hearings on the petition were conducted by the trial court. The first hearing resulted in a finding by the court that section

6 of the will was ambiguous. The evidence at the second hearing shows that the decedent purchased all of the United States Government Series "E" bonds and the majority of the certificates of deposit prior to the date of the execution of her will. The decedent did not own any common stock or corporate bonds at the time her will was executed or at her death.

The trial court held that the United States Government Series "E" bonds and the certificates of deposit owned by decedent at the time of her death passed as "securities" under section 6 of the will. The trial court ordered that the debts and expenses of administration, including taxes, be paid from the proceeds of the life insurance policies, the checking accounts and the savings accounts. The trial court also ordered that any residue from the property allocated to the payment of the expenses pass as intestate property.

Beaver and Karraker first contend that the trial court erred in finding that the certificates of deposit owned by the testatrix at the date of her death passed under section 6 of the will as "securities." More specifically, they argue that the common usage of the term "securities" means corporate stocks, bonds, treasury notes and other negotiable instruments. Further, it is asserted that because the certificates of deposit were designated as non-negotiable, they must pass as intestate property rather than under the will.

The issue raised here as to what property passes under the term "securities" as employed in a will has not been considered by the courts of our State. This issue, however, has been discussed in other jurisdictions. (See generally Annot., 27 A.L.R. 3d 1386 (1969); 79 C.J.S. "Security"; "Securities" (1952).) Reviewing the annotation and cases cited therein, the term "securities" has been construed to encompass evidence of a debt or property or an instrument entitling the holder to demand property held by another. Corporate bonds, shares of stock and certificates of deposit are all within this definition. We do not find any support for appellants' assertion that the term "securities" is commonly defined as negotiable instruments. If appellants intend by their use of the term negotiable instruments to refer to that term as defined in the Uniform Commercial Code—Commercial Paper (Ill. Rev. Stat. 1979, ch. 26, par. 3—104) then clearly certificates of deposit are included within this definition. If appellants mean to refer to negotiable instruments in the general sense of investments in the financial sector of the economy, then certificates of deposit are encompassed within this definition as well. We conclude that the better definition of the term "securities" encompasses evidence of a debt or property.

It is well-established that the primary objective in construing a will is to ascertain and give effect to the intent of the testator, unless it is contrary to law or public policy (*Rosenthal v. First National Bank* (1968), 40 Ill. 2d 266, 239 N.E.2d 826.) Where the will is ambiguous, extrinsic evidence may be considered by the court in determining the testator's intent at the time of the execution of the will. (*Weir v. Leafgreen* (1962), 26 Ill. 2d 406, 186 N.E.2d 293; *Wielert v. Larson* (1980), 84 Ill. App. 3d 151, 404 N.E.2d 1111.) Here, appellants concede that the testator's intention by the use of the term "securities" cannot be ascertained from its context alone. Therefore, it is necessary to examine the surrounding circumstances.

■ The record supports the finding of the trial court that the testatrix did not own any shares of stock or corporate bonds at the time of the execution of her will. Appellants' assertion that more probative evidence could have been adduced at the hearing is without merit. The executor of the estate, the testatrix' stepson, testified that he could not find any evidence that the testatrix owned corporate stocks or bonds at that time. At the time of her death, the testatrix' estate consisted primarily of certificates of deposit. In addition, the record shows a pattern of investment by the testatrix in certificates of deposit. We conclude that the trial court correctly ruled that the testatrix intended by the term "securities" in section 6 of the will to pass the certificates of deposit owned by her at her death.

Beaver and Karraker next contend that because the testatrix' will did not indicate the source of payment of the expenses of administration and estate taxes, these charges should be equitably apportioned between the testate and intestate assets of the estate, citing *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, and *In re Estate of Gowling* (1979), 77 Ill. App. 3d 548, 396 N.E.2d 82.

Illinois law controls the allocation of the burden of Federal estate tax liability on estates administered in Illinois. (*Riggs v. Del Drago* (1942), 317 U.S. 95, 87 L. Ed. 106, 63 S. Ct. 109.) Our supreme court has adopted a rule of equitable apportionment of Federal estate taxes and administration expenses between the probate and nonprobate estates, in the absence of a contrary direction by the decedent. *Roe; In re Estate of Gowling* (1980), 82 Ill. 2d 15, 411 N.E.2d 266.

■ We recently discussed the applicability of the rule of equitable apportionment to the probate assets in *In re Estate of Maddux* (1981), 93 Ill. App. 3d 435, 417 N.E.2d 266. In *Maddux*, two residuary legatees appealed from the judgment of the trial court finding that the residuary estate should bear the burden of the estate taxes and fees without apportionment. On appeal, the residuary legatees asserted,

among other things, that Illinois law now permitted Federal estate taxes to be apportioned so that every beneficiary bears a proportionate share of the taxes, relying on the cases cited by appellants here. We rejected this argument and affirmed the judgment of the trial court. We reasoned that where the will contained no direction as to manner of payment, Illinois law required that the payment of taxes and other fees first be made from the residuary estate. We also noted agreement with the fourth district's reasoning in *In re Estate of Gowling*, which the supreme court did not modify or repudiate on appeal. In *Gowling*, the fourth district stated that there were two distinct rules to be applied in determining the allocation of the burden of estate taxes with respect to testate estates. As between probate assets, Illinois follows the burden on the residue rule. Where there are nonprobate assets that generate estate tax liability, however, equitable apportionment between the probate and nonprobate assets may be sought. We conclude, therefore, that the rule of equitable apportionment does not apply to the instant case because decedent's estate consisted solely of probate assets, that is, assets passing by will or intestacy.

Assuming, *arguendo*, that the rule of equitable apportionment may be applied as between the probate assets of an estate, we conclude that apportionment is not appropriate in the instant case. As the supreme court recognized in *Roe v. Estate of Farrell*, equitable apportionment of estate taxes or fees does not apply where a contrary intent has been manifested by the testator in his will or by the legislature.

■ Section 11 of the will, which stated that the specific devisees and legatees receive their respective devises and bequests without the deduction of any taxes, provides such a contrary direction. In our opinion, section 11 of the will precludes equitable apportionment as it clearly expresses the intent of the testatrix that death taxes be paid only from that portion of the estate not the subject of a specific devise or bequest.

■ Finally, our supreme court has stated that under section 2—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1979, ch. 110½, par. 2—1), which provides the rules of descent and distribution for intestate property, the legislature intended that the respective interests of the heirs at law be calculated from the net estate after the payment of all just claims. (*In re Estate of Grant* (1980), 83 Ill. 2d 379, 415 N.E.2d 416.) This interpretation precludes the application of the rule of equitable apportionment in the case at bar because it requires that claims against the estate, including estate taxes, be paid from the gross es-

tate before the interests of the heirs are calculated.

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

KASSERMAN and HARRISON, JJ., concur.