## WILLIAM GILMAN

*v.*

## ROBERT B. BELL.

*Filed at Ottawa May 14, 1881.*

1. WILL—*whether passes life estate, or mere power of appointment.* A devise of real estate to a woman, to have and to hold the same in trust for and during the natural life of her husband, and upon his decease directing her or her successor in trust to convey the same to the heirs at law of the husband, with a proviso that if the husband, during his lifetime, should request her or her

legal successor in trust to convey the same to himself, or to any other person, she or her successor should promptly comply with such request, and that the title should pass to the grantee, does not invest the husband with a life estate in the property. He will take no estate of any kind, but merely a naked power of appointment.

2. SAME—*who are cestuis que trust in a devise for life.* Where a testator devised certain real estate in fee to A, subject to the payment of two legacies to the sons of B, and after the marriage of A and B, by his codicil, in lieu of such bequest, devised the same to A, to have and to hold the same in trust for and during the natural life of her husband, B, and directed that upon his decease the trustee should convey and deliver the same to the heirs at law of B, provided, however, that in case the said B should, during his life, so request, the said trustee should convey and transfer the same to him or to any other person or persons: *Held*, that A, the trustee, took a life estate and held the fee in trust for the heirs of B, her husband, subject to the power in B to defeat both estates by appointing a conveyance to himself or to another.

3. POWER—*exercise of, not enforced for benefit of creditors.* Courts of equity will not aid creditors of a donee of a power, where there is a non-execution of the power, by compelling him to execute the same in his own favor. But where there has been a defective execution, the court will supply the defective execution in favor of a purchaser, creditor, wife or child.

4. No title or interest in the thing vests in the donee of a power until he exercises the power. It is virtually an offer to him of the estate or fund, that he may receive or reject at will, and like any other offer to donate property to a person, no title can vest until he accepts the offer, nor can a court of equity compel him to accept the property offered, against his wish, even for the benefit of creditors.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM H. BARNUM, Judge, presiding.

Messrs. PECKHAM & BROWN, for the appellant:

The language of the codicil, read in the natural and reasonable way, expressly and explicitly makes Ellen L. Bell the trustee for her husband, Robert B. Bell, during his natural life, and after his death directs her to convey to his heirs at law.

The legal as well as the equitable estate is in Robert B. Bell, through the operation of the statute of uses. Ellen L. Bell is a trustee, under the terms of the codicil, with absolutely no duties, except to stand seized to the use of Robert B. Bell,

and to convey during his life to his grantees, and on his death to his heirs. 2 Jarman on Wills, 269; Equity Cases Abridged, 382; *Witham* v. *Brooner,* 63 Ill. 344; *Turney* v. *Wilton et al.* 36 id. 385.

A general power makes the donee equitable owner of the estate, and gives him such a dominion over it as subjects it to his debts. *Brainton* v. *Ward,* 2 Atkins, 172; Bump Fr. Convey. (2d ed.) 241; Rev. Stat. ch. 77, sec. 3.

Mr. CALVIN DE WOLF, and Mr. WALLACE L. DE WOLF, for the appellee:

There is nothing granted directly to Robert B. Bell by the will or codicil, except an appointing power. The will gives everything to Ellen L. De Wolf, absolutely, subject to two legacies of $500 each.

The codicil devises all the property, "real, personal and mixed," to the same person (now Ellen L. Bell) in trust, to convey to Robert B. Bell's heirs at law, or to a successor in trust, in certain contingencies.

The unexecuted power of appointment expressed in the will confers no interest on Robert B. Bell, and can not be available to his creditors. *Riggs* v. *Nancy,* 2 Johns. Ch. R. 576.

The power of appointment granted to Robert B. Bell can not be available to the complainant, as a creditor. A court of equity will not compel him to execute it. 1 Story's Eq. Jur. p. 166, sec. 170, 172, n 4; *Harrington* v. *Harte,* 1 Cox, 131; *Townsend* v. *Windham,* 2 Ves. Sr. 1; *Lassels* v. *Cornwallis,* 2 Vern. 465; *Holloway* v. *Millard,* 1 Madd. 414; *Sanders* v. *Franks,* 1 id. 418; *Mitchell* v. *Denson,* 29 Ala. 327.

Robert B. Bell could not have an interest in this property under the statute of uses. *Kirkland* v. *Cox et al.* 94 Ill. 400.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant purchased a judgment against appellee, which was rendered in the Superior Court of Cook county, in favor of Francis Abel, for $1000, upon which an execution had

been issued, and returned no property found. An *alias* execution was issued and levied on certain real estate in which it is alleged appellee holds an interest.    Appellant filed a bill to subject the lands to the payment of his judgment. Appellee filed a demurrer to the bill, which was sustained by the court below, and the bill was dismissed.

The question presented by the record arises on a provision in the will of Solomon Bell, the father of appellee.   So much of the will as it is necessary to consider provides:

"I give and devise to Ellen L. De Wolf, of the city of Chicago, in said State, a parcel of land in said town of Hyde Park, seventy feet front on Cottage Grove avenue, by one hundred and thirty-five (135) feet in depth, being (heretofore) numbered 830, 830½, 832, and 834, and being the only property on said Cottage Grove avenue owned by me.   * * *

"The property herein devised and bequeathed to said Ellen De Wolf is, however, devised and bequeathed to her subject to two legacies, viz: A legacy of five hundred dollars, which I give and bequeath to Edward Bell, to be paid by her to him out of the estate herein given to her, when he shall arrive at the age of twenty-one years; and a legacy of five hundred dollars, which I give and bequeath to Frederick Bell, to be paid by her to him out of the estate herein given to her, when he shall arrive at the age of twenty-one years,— the said Edward and Frederick being the sons of Robert B. Bell, who is my son."

He subsequently made this codicil:

"In and by said will I devised and bequeathed to Ellen L. De Wolf, (who is now Ellen L. Bell, the wife of my son, Robert B. Bell,) certain real and personal estate absolutely, subject, however, to the payment of two legacies out of the estate so devised and bequeathed to her, viz: one of five hundred dollars to Edward Bell, and of five hundred dollars to Frederick Bell, (the said Edward and Frederick being sons of said Robert B. Bell).

"Now, in lieu of said devise and bequest to said Ellen, and in lieu of said devises and bequests to said Edward and Frederick, it is my will, and I hereby devise and bequeath, all the property, real, personal and mixed, which in and by said will was devised and bequeathed to Ellen L. De Wolf, to said Ellen L. Bell, to have and to hold the same in trust, however, for and during the natural life of her said husband; and upon his decease, it is my will, and I hereby direct, that she or her legal successor in this trust convey, transfer and deliver the same to the heirs at law of said Robert B. Bell: provided, however, that in case said Robert B. Bell shall, during his lifetime, request her or her legal successors in this trust to convey, transfer and deliver the same to himself, or to any other person or persons, she or her said successor is hereby enjoined to promptly comply with such request, and the title shall pass to the grantee or grantees by such conveyance and transfer."

The controversy grows out of the last clause of this codicil. Appellant contends that appellee took under it a life estate, or if not, such an equitable estate as should be subjected to the payment of his judgment. On the other hand, it is insisted that he took no estate of any kind, but merely a naked power of appointment.

It is urged that the words, "to have and to hold in trust for and during the natural life of her said husband," should be interpreted as being the same as to have and hold for the use of her husband, during his natural life. We are unable to see that such is the meaning of the language. The will does not so declare, and we have no power to interpolate such language. The trust is not declared in terms, and we may infer who was intended as the *cestui que trust*, from the fact that he had devised this property to Ellen Bell in fee, subject to two bequests. In the codicil he, however, changed it, so as to give the fee to the heirs of her husband, and failing to name a *cestui que trust*, it would seem to have been testator's purpose to modify the estate from a fee simple to Mrs. Bell,

to a life estate, and for her to hold the fee in trust for the heirs of her husband. From the entire will, we are of opinion we are fully warranted in drawing the conclusion that such was the testator's intention in executing the codicil. Not. only so, but the language does not import a life estate to Bell. It is true that Bell had the power to defeat not only the life estate to his wife, but the devise of the remainder to his sons, by appointing a conveyance to himself or to another,—but he has not exercised the power.

It may be asked, why defer the final execution of the trust until that period? It may be answered, that a testator is not required to assign reasons for the disposition of his property. But it may be, that as he intended that all of appellee's heirs at law should take in equal parts, and it should be held in trust until that time, they might be then known,—that between testator's death and that of appellee, by deaths and births, many changes might occur. But if the trust was not created for the benefit of appellee, it is not material in this case to determine who are the beneficiaries. If not for his benefit, he, by the will, took no interest, either legal or equitable, in the property by the will, and if so, he was only the donee of a naked power to appoint in favor of himself or others. And we are of opinion that such was the intention, and he took no interest in the property, but a mere power to acquire an interest, which he has never exercised.

But it is insisted, that, conceding it to be a mere naked power of appointment in favor of himself, in favor of creditors he should be compelled by a court of equity to so appoint, or be treated as the owner, and the property subjected to the payment of his debts. The doctrine has been long established in the English courts, that the courts of equity will not aid creditors in case there is a non-execution of the power. But where there has been a defective execution, the court will supply the defective execution of the power in favor of a purchaser, creditor, wife or child. Sugden on

Powers, 392; 4 Kent, 339; 1 Story's Eq. sec. 169; *Holmes* v. *Coghill*, 12 Ves. 306. And it has been held that where the power has been executed in favor of a volunteer, the court will seize the fund and apply it to the satisfaction of the debts of the donee of the power. *Bainton* v. *Ward*, 2 Atkins, 172, and numerous other cases. The doctrine that a court of equity will not aid in case of the non-execution of the power, was so firmly established in England that it could only be changed by act of 1 and 2 Vict. ch. 111, sec. 113. And our statute, chap. 22, sec. 1, in conferring chancery jurisdiction on the courts, provides that they shall proceed as therein prescribed; and where no provision is made by that chapter, then according to the general usage and practice of courts of equity. Hence the courts have regarded English precedents as authority. We therefore feel constrained to conform to the unbroken chain of English decisions.

It is urged that the case of *Bainton* v. *Ward*, *supra*, announces a different rule. This is a misapprehension. In that case the donee of the power executed it in favor of volunteers, and the court decreed its payment to satisfy the creditors of the donee.

And in *Holmes* v. *Coghill*, 7 Ves. 499, Sir WILLIAM GRANT, Master of the Rolls, says, Lord Hardwicke, in *Townshend* v. *Windham*, 2 Ves. Sr. 1, lays it down expressly, that without an appointment no person could be entitled to the money, and he says that anything said to the contrary in *Bainton* v. *Ward*, *supra*, was not necessary to the decision of the case. It is therefore probable that *Bainton* v. *Ward*, *supra*, was inaccurately reported. At any rate, what was said in that case seems to be isolated, and was not followed even by Lord Hardwicke.

Nor are the distinctions entirely without reason. No title or interest in the thing vests in the donee of the power until he exercises the power. It is virtually an offer to him of the estate or fund, that he may receive or reject at will,

and like any other offer to donate property to a person, no title can vest until he accepts the offer, nor can a court of equity compel him to accept the property or fund against his will, even for the benefit of creditors. If it should, it would be to convert the property of the person offering to make the donation to the payment of the debts of another person. Until accepted, the person to whom the offer is made has not, nor can he have, the slightest interest or title to the property. So the donee of the power only receives the naked power to make the property or fund his own. And when he exercises the power, he thereby consents to receive it, and the title thereby vests in him, although it may pass out of him *eo instanti*, to the appointee. And when the appointee is a volunteer, the court holds that he, by the appointment, endeavors to misapply his property to defraud his creditors,—that he must be just before he is generous. This seems to be the reason upon which the cases proceed.

We are of opinion that appellee has no interest in this property, and that no relief can be granted, and the demurrer was properly sustained to the bill, and the decree of the court below must be affirmed.

*Decree affirmed.*