(No. 24430.
THE NORTHERN TRUST COMPANY *et al.* Appellants, *vs.* WASHINGTON PORTER II, *et al.* Appellees.

*Opinion filed February 16, 1938.*

VERNON R. LOUCKS, and A. J. HENNINGS, (CHARLES O. LOUCKS, of counsel,) for appellants; EDWARD MARSHALL, guardian *ad litem,* for co-appellants; TENNEY, HARDING, SHERMAN & ROGERS, (HENRY F. TENNEY, WILLIAM W. MILLER, and GEORGE B. ROGERS, of counsel,) for Henry F. Tenney, guardian *ad litem* for separate appellants.

SIDLEY, McPHERSON, AUSTIN & BURGESS, and POPPEN-HUSEN, JOHNSTON, THOMPSON & RAYMOND, (EDWARD R. JOHNSTON, JAMES F. OATES, JR., ALBERT E. JENNER, JR., and WILLIAM H. AVERY, JR., of counsel,) for appellees and cross-appellants.

Mr. JUSTICE JONES delivered the opinion of the court:

Caroline McWilliams died in 1913 leaving a will by which she bequeathed certain property (known as the Mc-Williams fund) to her daughter, Frances Lee Porter, as trustee, to receive the income for life. In addition, Frances Lee Porter was given the general power to appoint the fund by her will. In 1931, Mrs. Porter instituted suit against her son, Washington Porter II, in the superior court of Cook county. The bill of complaint is lengthy, but, in substance, alleges that Washington Porter II had, over a long period of time, schemed and contrived to strip Mrs. Porter of practically everything she possessed. The court found that a fiduciary relationship existed between the defendant, Washington Porter II, and his mother; that defendant caused complainant to execute and deliver to him six quit claim deeds to certain property, she not knowing what she

was signing, and further, that defendant, by fraudulent means, caused his mother to execute to him powers of attorney, and assignments of stock and checks, in substantial amounts.

At or about this time, Mrs. Porter created a trust estate naming the First Union Trust and Savings Bank of Chicago as trustee. The instrument excluded Washington Porter II as beneficiary. Subsequently, and during the suit against him, settlement negotiations were begun, and, in 1933, a settlement contract was entered into by Mrs. Porter and her son. She agreed to revoke the 1931 trust and to create a new trust naming the First Union Trust and Savings Bank as trustee. This is known as the "Living Trust." The *corpus* was to be held for the benefit of Mrs. Porter for life and then to be divided, one-half to Washington Porter II, for life, and one-half to a daughter, Pauline Porter White, for life. The McWilliams fund was included in the Living Trust. In return, Washington Porter II covenanted to sign and turn over to the trustee the property fraudulently acquired by him. Mrs. Porter created the trust and made a will appointing the McWilliams fund according to the settlement agreement. The agreement was made part of the decree and a satisfaction piece was filed of record, acknowledging the performance by Washington Porter II of the terms of the decree.

Frances Lee Porter died in 1935 leaving a will executed in 1934, which revoked all prior wills. This will devised two-thirds of the property over which she had power of appointment to the First National Bank of Chicago and Pauline Porter White, as trustees, and one-third to said bank and Washington Porter II as trustees. The First National Bank resigned as co-trustee and Washington Porter II refused to act. The Northern Trust Company was appointed successor co-trustee.

This suit was instituted by the Northern Trust Company and Pauline Porter White, who, as executors of the will of

Frances Lee Porter, took legal title to the McWilliams fund. The First National Bank of Chicago is a corporate successor of the First Union Trust and Savings Bank.

The plaintiffs, the Northern Trust Company and Pauline Porter White, contend that the last will of Mrs. Porter is valid and should be enforced, and that any contract to appoint the McWilliams fund is void. The First National Bank and Washington Porter II, defendants, as third-party beneficiaries, assert a claim for damages, as a result of Mrs. Porter's failure to exercise the power of appointment pursuant to the settlement agreement. Pauline Porter White, Pauline Porter Muirhead, Marguerite Muirhead, Elizabeth Muirhead, and Gloria White, minors, by their guardian *ad litem* adopt the brief of the Northern Trust Company and further assert that the settlement decree was not supported by valuable and adequate consideration. Frederick C. Porter, Jr., and Robert H. Porter, (children of a deceased son of Mrs. Porter) minors, by their guardian *ad litem,* urge that the provisions of the last will of Mrs. Porter, in so far as they concern the McWilliams fund, violate the rule against perpetuities and that, as a result, the fund passes in default of appointment to the issue of Mrs. Porter, as provided in the will of the donor, Caroline McWilliams.

The circuit court of Cook county decreed, *inter alia,* that the agreement to create the trust, the contract to appoint, and the appointment, are valid; that the First National Bank, as trustee of the Living Trust, is entitled to damages against the estate of Frances Lee Porter, as a result of her breach of contract to appoint the fund pursuant to the settlement agreement, and that the provisions of the will relating to the McWilliams fund do not violate the rule against perpetuities.

The McWilliams fund was appointed by Mrs. Porter by her will of 1934 substantially as follows: Two-thirds to the First National Bank of Chicago and Pauline Porter

White in trust for the following purposes: The net income shall be paid to Pauline Porter White for life and after her death to her surviving children and their descendants *per stirpes.* "Upon the death of the last surviving child of Pauline Porter White, or twenty-one years after the death of the last surviving child of Pauline Porter White who was living at the time of my death, whichever event shall happen first, I direct that the principal of said trust estate, together with all accumulated and unpaid income, if any, shall be paid in equal shares to the then surviving lawful children of Pauline Porter White—the then surviving lawful descendants of [my] deceased child to take, *per stirpes,* the share which their parent would have received if living. In the event that my said daughter does not leave any lawful descendants her surviving, I direct that said trust estate shall be paid, *per stirpes,* to my then surviving lawful descendants."

The same provision was made for Washington Porter II as regards one-third of the fund. None of the children of Pauline Porter White was in being at the death of Mrs. McWilliams. Washington Porter is unmarried and has no children.

It is obvious, that if the period of the rule against perpetuities is computed from the time of the creation of the power by the donor, the gift of the McWilliams fund violates the rule against perpetuities. It is equally clear that if the period is computed from the date of the exercise of the power by the donee, that the gift does not violate the rule against perpetuities. The question presented for decision is whether the period of perpetuities begins to run from the date of the creation of the power or from the date of its exercise. It must be borne in mind that we are concerned only with the general power of appointment by will, and not with the special power of appointment or a power to appoint by deed or will. This question has not been presented to this court before. It may therefore not be amiss to review the authorities.

Professor Gray asserted that the period of perpetuities begins to run from the date of the creation of a general testamentary power. On the other hand, Professor Kales argued that the date of the exercise of the power was the time from which the period should be computed. (26 Harvard Law Review, 64, 26 H. L. R. 720-727.) Both Gray and Kales agreed that the test as to when the period of perpetuities should start to run depended upon whether the donee was "practically the owner" of the appointive fund. Gray contended, with forcefulness, that the donee of a testamentary power of appointment "is not practically the owner; he cannot appoint to himself; he is, indeed, the only person to whom he cannot possibly appoint, for he must die before the transfer of the property can take place." (Gray on Perpetuities, (3d ed.) sec. 526 (b).) Kales replied that the time for determining whether or not the donee was "practically the owner" was at the moment of exercising the power. It was his view that the donee of a general power to appoint by will is, at the moment when he may exercise the power, practically the owner. (Kales, Estates and Future Interests, (2d ed.) sec. 695.) To this, Gray countered, "But a man cannot, in the eye of the law, be at the same time alive and dead. So long as he is alive, the condition necessary for the exercise of the power is not fulfilled, and after he is dead, he cannot be an appointee. (Gray on Perpetuities, sec. 952.)

On the side of Kales are the English cases, *Rous* v. *Jackson,* 29 L. R. Ch. Div. 521, which overruled *In re Powell's Trust,* 39 L. J. Eq. 188; *In re Flower,* 55 L. J. Ch. 200, and, in Ireland, *Stuart* v. *Babington,* 27 L. R. Ir. 551. The Supreme Court of Wisconsin has agreed with Kales in holding that the donee of a general testamentary power of appointment was "practically the owner" at the time of the exercise of the power and, therefore, that the period of perpetuities was to be computed from the date of the exercise of the power. *Miller* v. *Douglas,* 192 Wis. 486.

The weight of the American decisions, however, supports the view of Gray. The leading case is *Minot* v. *Paine,* 230 Mass. 514. In accord are *Re Warren,* 320 Pa. 112; *Re Lawrence's Estate,* 126 Pa. 354; *Genet* v. *Hunt,* 113 N. Y. 158, (under the New York statute.)

The most recent text writer upon this subject is Professor Simes of Michigan. He sums up the law as follows:

"There has been some controversy over the question whether, in determining the validity of an appointment under a general power to appoint by will, the period should be calculated from the creation of the power or from the time of its exercise. The weight of authority in the United States, and, it is believed, the better reason is in favor of the view that general power to appoint by will should be treated as a special power in this respect, and that the period should be computed from the time of the creation of the power. It has been argued that, since the donee of a general power to appoint by will may appoint to his own estate or to any person for a consideration, he is in substance the owner to almost the same extent as if he had a general power to appoint by deed as well as by will, and that, being substantially the owner, the rule should only apply from the time the power is exercised. It is believed, however, that from a practical standpoint the position of the donee of a general power to appoint by will is very different from that of the donee of a power to appoint by deed. Wills are not, as a rule, commercial transactions. The fact that a man has an unrestricted power to appoint property by will does not mean that he is likely to put the property on the market and sell it. The very fact that he is limited to a disposition by will means that he will probably dispose of it to members of his family or to charities by way of gift. The property, during the existence of this power, is, from a practical standpoint, removed from commerce. And it is proper, in determining remoteness, to

count the period from the creation and not from the exercise of the power."

After a careful consideration, we prefer to adopt the views expressed by Professors Gray and Simes, and we hold that the attempted exercise of the power violated the rule against perpetuities. The purpose of the rule against perpetuities is to prevent property from being kept out of the channels of commerce for too long a period of time. Since the donee of a general testamentary power of appointment cannot appoint the property during his lifetime, and restraint on alienation begins at the time of the creation of the power by the donor, the validity of an appointment, under a general testamentary power, must be determined by considering the donee's appointment as part of the instrument created by the donor. Thus, we must look to see whether or not the remainders will vest in interest (although not necessarily in possession) within the period measured from the time of the creation of the power by the donor. Of course, events as they actually exist at the time of the appointment by the donee may be considered in this determination, and a ground of invalidity apparently existing under such a gift as of the date of the creating instrument, which can no longer occur, need not be considered. This was apparently the view of *Hopkinson* v. *Swaim*, 284 Ill. 11, which considers a special power of appointment, to which the same rule should apply.

This holding necessarily raises the question whether the valid portions of the appointment can be separated from the invalid portions. We are of the opinion that they cannot. The trust presents one entire, connected scheme for the disposition of the McWilliams fund, and the provisions are interdependent. There is no gift of the fee to the children of the donee followed by an invalid successive interest. It is our opinion that the donee would have preferred to die intestate as to the power of appointment rather than to have the appointment take effect with the void clause

left out. *Barrett* v. *Barrett,* 255 Ill. 332; *Reid* v. *Vorhees,* 216 id. 236; Kales, Estates and Future Interests, sec. 708 (2).

The entire appointment failing, what should become of the McWilliams fund? Should it pass by intestacy to the heirs of Mrs. Porter or should it pass in default of appointment as provided by the donor? This question is one of intention of the donee.

In *Bradford* v. *Andrew,* 308 Ill. 458, a share of appointed property lapsed. This court held that the lapsed share passed to the heirs of the donee. The appointed property, however, was blended with the rest of the donee's property by use of the following words: "By this clause of my will it is intended, and I so hereby declare, that the same shall comprise, in addition to the property which I have in my own name, all property devised to me by and under the terms of the last will and testament of my deceased husband," etc. The *Bradford case* shows an intention that the donee would prefer a lapsed fund to pass to his heirs rather than to the heirs of the donor, as is evidenced by the fact that the donee blended the appointed property with property of his own.

The blending of an appointment with the rest of the property of the donee indicates an intention that if the appointment is ineffective, the appointed property should go into the estate of the donee rather than to the beneficiaries in default. In the instant case, the exercise of the power of appointment is made a separate and distinct clause of the will of the donee and is not mingled with her own property.

*Talbot* v. *Riggs,* 191 N. E. (Mass.) 360, (1934,) involves the exercise of a general power of appointment which was held ineffective because it violated the rule against perpetuities. The same question arose as in this case. The Massachusetts court reviewed the Massachusetts law by saying: "This point is expressly covered by *Dunbar* v. *Hammond,* 234 Mass. 554, on page 558, paragraph 6, 125

N. E. 686. It was there held that the trustee named in the instrument whereby the power of appointment was exercised held the fund for heirs-at-law and next of kin of the donee of the power. In *Bundy* v. *U. S. Trust Co.* 257 Mass. 72, 80, 81, 153 N. E. 337, 340, the case of *Dunbar* v. *Hammond* was cited with approval and it was said that, although where property was appointed under a general testamentary power on 'a trust which failed for want of a *cestui que trust,* the property passed by a resulting trust to the next of kin of the donee,' the rule was 'limited to the case where the donor has made no provision for the donee's default of appointment, or for the event of his intestacy.' " The appointive fund passed to the estate of the donee, but here, again, there was no provision for default of appointment. It is our belief that Frances Lee Porter would have preferred that the McWilliams fund pass by default of appointment rather than by intestacy. We do not depart from *Bradford* v. *Andrew, supra,* but rather we rely upon it to show that in this type of case the question is one of intention of the donee. As before stated, the *Bradford case* shows an intention that the donee would prefer a lapsed fund to pass to his heirs rather than to the heirs of the donor as is evidenced by the fact that the donee blended the appointed property with property of his own.

Since the McWilliams fund passes under the will of the donor by default of appointment, the question of damages, due to Mrs. Porter's failure to appoint the fund in accordance with the settlement agreement, remains. The settlement agreement provided for execution of the power of appointment, and an execution, ineffective because of the rule against perpetuities, is as much a breach of the agreement as would be an execution contrary to the terms of the agreement or non-execution of the power.

The only claim of the defendants is for damages from the estate of Mrs. Porter, including the McWilliams fund, which damages consist of the value of the McWilliams fund

at the time of Mrs. Porter's death, with interest thereon from the date of her death. It is conceded that the contract is not specifically enforceable.

The donor, in giving a general power of appointment by will, only, intends that the donee shall retain his discretion as to who shall receive the property subject to appointment, until the time of his death. The purpose of giving such power is to allow the exercise of such power to represent the final judgment of the donee. To permit a contract to appoint in a certain way to be binding would be, in effect, to change the power from a general testamentary power to a power to appoint by deed or will. The intention of the donor must not be thus circumvented. This holding, of course, in no way implies that an appointment in compliance with a contract to appoint will be set aside.

If the defendants' claim for damages be allowed, it would indirectly be allowing performance of the settlement contract and the defendants would become creditors of the estate of Mrs. Porter. Since Mrs. Porter's individual estate is very small, the McWilliams fund would have to be retained as part of the donee's estate in order to satisfy creditors, who take in preference to appointees or takers in default after a defective appointment. *Gilman* v. *Bell,* 99 Ill. 144.

Moreover, the knowledge that damages would be given in case she did not comply with the contract would make the donee reluctant to breach the contract and thus to exercise her freedom of choice up to the last moment of her life,—a thing which the donor intended. In other words, if damages are allowed against the estate of the donee, it has the effect of exerting coercion of a threatened judgment to compel voluntary performance of an act which could not be judicially enforced by specific performance. For this reason, damages may be recovered from neither the individual estate of the donee nor from the appointive fund. In so holding, we do not depart from *Gilman* v.

*Bell, supra.* What was said there applies to creditors of the donee other than the promisee of a contract to appoint property subject to a power of appointment. In the instant case, the contract to appoint is entirely void, and as a result the defendants are not creditors of the donee, so as to come under the rule of *Gilman* v. *Bell, supra.*

Our view is in accord with that of the reporters of the American Law Institute, who state, in the Restatement of Property, tentative draft No. 7, sec. 463, comment (a): "By giving a testamentary power or a power otherwise not presently exercisable, the donor expresses an intent that the discretion as to the exercise of the power shall be retained until the donee's death or such other time as is stipulated. To specifically enforce a promise to appoint under such a power would be to permit the donor's intent as to disposition of his property to be directly defeated. Moreover, to allow the donee to render himself liable in damages for breach of such promise would be to permit the donor's intent to be defeated by indirection; for the compulsion of a prospective suit for damages would be sufficient to eliminate any practical freedom of choice after the making of the contract. These considerations are especially strong where the power is special and consequently the duty to postpone the exercise of discretion is one of the fiduciary duties owed to the objects of the power; but even where the power is general the fulfillment of the donor's lawful wishes is a sufficient reason for denying validity to promises to appoint." The reporters evidently preferred not to follow the case of *In re Parkin,* 3 L. R. (Ch. Div. 1892) 510, 1892 Probate 591, and with them we agree.

The decree of the circuit court is reversed and the cause is remanded, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*