(No. 24262.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE
METROPOLITAN TRUST COMPANY, Admr., Appellant.

*Opinion filed June 15, 1938.*

ORR and FARTHING, JJ., dissenting.

HAROLD J. CLARK, and WILSON & McILVAINE, (STUART
J. TEMPLETON, and J. F. DAMMANN, of counsel,) for appellant.

OTTO KERNER, Attorney General, (JAMES G. SKINNER,
E. MARVIN CAPOUCH, and ASHLEY GREENE, of counsel,)
for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

The Metropolitan Trust Company, administrator with
will annexed of the estate of Herman Bloomquist, deceased,

has appealed from the judgment order of the county court of Cook county fixing the inheritance tax in that estate.

Herman Bloomquist died January 5, 1936, leaving Elenora S. Bloomquist, his wife, as his sole heir-at-law. His will, after making disposition of certain other property, gave the residuary estate to a trustee, with directions to pay the income to Elenora S. Bloomquist during the remainder of her life, and, upon her death, to distribute the remainder in accordance with her last will and testament. No provision was made in event the power of appointment was not exercised. The testator's wife survives him. A tax was assessed in the estate of Herman Bloomquist on the transfer of the remainder, on the assumption that Elenora S. Bloomquist would exercise the power of appointment in favor of a stranger to the blood of the testator, so making applicable the highest possible rate of ten per cent.

There is no issue of fact in the case. The only issue of law concerns the method to be employed by the county court in assessing the tax. It is conceded by appellant that since the repeal of a portion of sub-section 4 of section 1 of the Inheritance Tax act in 1933, (Ill. Rev. Stat. 1937, chap. 120, par. 375,) the act, as it existed at the time of the death of Herman Bloomquist, authorized the assessment of a tax in the estate of the donor of the power, covering the transfer of the remainder. The sole question involved in the case, therefore, is whether such inheritance tax shall be assessed on the assumption that the power would be exercised for the benefit of a stranger, as the county court held, or on the assumption that the power would not be exercised, whereby the undisposed of remainder would go to the heirs-at-law of the testator. Appellee says that since the repeal of that portion of sub-section 4 of section 1, having to do with the non-exercise of a power of appoint-- ment, section 25 of the Inheritance Tax act providing: "When property is transferred or limited in trust or otherwise, and the rights, interests or estates of the transferees

or beneficiaries are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of this act," (Ill. Rev. Stat. 1937, chap. 120, par. 398,) requires that the tax be assessed as was done in this case. Appellant, on the other hand, says that the remaining portion of sub-section 4 of section 1 is still a part of the statute and must be given the effect which this court has previously accorded it, and thus an issue is formed.

Section 1 of the act providing for a tax on gifts, legacies, inheritances, etc., provides that a tax shall be imposed upon the transfer of any property or interest therein or income therefrom "in trust or otherwise, to persons, institutions or corporations, not hereinafter exempted, in the following cases:" etc. Sub-section 4 of section 1 provides: "Whenever any person, institution or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment, when made, shall be deemed a taxable transfer under the provisions of this act, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will."

Prior to 1933, sub-section 4 also provided that whenever the donee of the power omits or fails to exercise the power of appointment within the time provided therefor, a transfer, taxable under the act, shall be deemed to take place to the extent of such omission or failure, in the same manner as though the persons who become entitled to the possession of the property by reason of such failure to exercise the power "had succeeded thereto by the will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure." This court

has construed sub-section 4 as it stood before the amend-
ment striking out the provision for non-exercise of the
power. In *People* v. *Linn,* 357 Ill. 220, and in *People* v.
*Cavenee,* 368 id. 391, it was held that sub-section 4 as it
existed before amendment, was a limitation upon section 25
and that there was not, under the law as it then stood, any
tax presently assessable in the estate of the donor of the
power on the transfer of the remainders, but that such
tax should be postponed and assessed in the estate of the
donee of the power.

The question arising here concerns the effect of the
amendment of 1933 striking out the provision concerning
the non-exercise of the power. Appellee says that sub-sec-
tion 4 of section 1, as it now stands, is not to be taken as
a limitation upon the operation of section 25, but that sec-
tion 25 is now to be construed as authorizing the assess-
ment of a transfer tax on the assumption that the donee
will exercise the power of appointment for the benefit of a
stranger, and that the language of section 25, as it existed
in 1936, when Bloomquist died, directing that a tax shall
be imposed upon a transfer at the highest rate which, on
the happening of any of the contingencies or conditions
created by the will, would be possible under the provisions
of the act, is to be construed as authorizing a tax on such
assumption.

It will be noted that section 25 as it existed in 1935, re-
quired the imposition of a tax upon the transfer at the
highest rate possible "under the provisions of this act," and
unless sub-section 4, providing that the exercise of the power
shall be deemed a taxable transfer by the donee of the power,
the same as though bequeathed by him by will, is to be con-
sidered no longer a part of the act, then, under the holding
of the *Linn* and *Cavenee cases,* sub-section 4, as it now
stands, must, to the extent of its terms, be taken as a lim-
itation upon the power conferred by section 25. To hold
otherwise would be to render a provision of the act nuga-

tory. It is a matter of common legal acceptance, as a familiar rule of statutory construction, that legislative intent must be determined from a view of the whole and each part of a statute taken and compared together. (2 Lewis' Sutherland on Stat. Const. (2d ed.) 368; *People* v. *Donohue,* 276 Ill. 88; *People* v. *Henning Co.* 260 id. 554; *Belleville and Illinoistown Railroad Co.* v. *Gregory,* 15 id. 20.) Had the legislature intended that sub-section 4 should no longer be a limitation on the provisions of section 25, the easiest and clearest method of so expressing that intention would have been the repeal of all the provisions of that sub-section. That sub-section, as it now stands, is still a part of the statute and must be given effect in this case.

Prior to the amendment of 1933 the law indulged no assumption, and, therefore, the courts could indulge none, as to whether the power would or would not be exercised, for no tax on a transfer of the remainder could then be had in the estate of the donor, (*People* v. *Linn, supra; People* v. *Cavenee, supra;*) and it would be illogical to say that when the General Assembly repealed a part of sub-section 4 it intended that the remainder of that sub-section was no longer to be a limitation on the authority given in section 25. The language of section 25 imposing a tax at the highest rate possible under the happening of any contingency or condition, must necessarily relate to the highest rate possible under the transfer occasioned by the death of the testator,—in other words, the transfer which he made by his will. Thus the contingency referred to is one which affects the interest of those who become beneficiaries in case the power is not exercised. Such contingency, upon which such beneficiaries will take, is not that the power will be exercised but that it will not be. The gift of the power is not a contingency referred to. It will be remembered that the tax provided for in section 25 is the tax that is to be immediately assessed.

There may well be differing contingencies created by the will in case of non-exercise of the power, as where A gives the power of appointment to B, and on failure to exercise the power the remainder is to go to C, provided C outlives B, and if not, then to D. C's interest thus depends upon the contingencies that the power will not be exercised and that C will outlive B. Furthermore, D, named in the will, may be a stranger. Thus varied contingencies might arise within the contemplation of section 25. But how can a tax be logically assessed on an assumption, the truth of which prevents the assessment of such a tax? Action on an assumption presupposes that the thing or condition assumed exists or will come to pass. It is illogical to base action on an assumption which, if true or does come to pass, would itself preclude such action. As sub-section 4 provides for an entirely different transfer tax to be assessed in the estate of the donee of the power, where the power is exercised, to assume that it would be exercised, is to assume a situation wherein the State would have no power whatever to assess a tax in the estate of the donor of the power. *People* v. *Linn, supra; People* v. *Cavenee, supra.*

It seems clear that the language of section 25 imposing the highest rate "which on the happening of any of said contingencies or conditions would be possible under the provisions of this act," must be construed as limited by the provisions of sub-section 4, which call for an entirely different transfer tax in an entirely different estate in the event of the exercise of the power. Neither the amendment of sub-section 4, nor the language of section 25, warrants the conclusion that the tax presently assessable in the donor's estate is to be assessed on the assumption that the donee will exercise the power. The sub-section referred to covers the entire field of inheritance tax assessment in cases where the donee exercises the power of appointment, and unless a conclusion be drawn that the entire sub-section 4 was repealed,

which conclusion is not warranted, it must be held to still operate as a limitation on the language of section 25, for such limitation is "under the provisions of this act."

Counsel for the People say that the decisions of the New York Court of Appeals should be taken as controlling in this case because our act was taken from the New York act, and under a well-accepted rule of law, where such is done, the construction of the courts of the State from which the act is borrowed should govern. It is a rule that when a statute is adopted from another State the judicial construction previously placed on the statute by the courts of that State accompanies it and is treated as incorporated therein. *People* v. *Linn, supra; People* v. *Snyder,* 353 Ill. 184; *People* v. *Griffith,* 245 id. 532.

Counsel for the People cite *In re Cole's Estate,* 225 N. Y. 48, 138 N. E. 733, in support of their contention that the highest rate possible under the act in this case is a rate assessed on the assumption that the power of appointment will be exercised for the benefit of a stranger. An examination of that case will disclose that the New York Court of Appeals, in construing the section of the New York act corresponding to section 25 of the Illinois act, required that the property subject to a power of appointment be taxed in the estate of the donor of the power. The opinion does not disclose whether it was the view of the court that it should be assessed on the assumption that the power would be exercised, or that it would not be exercised, but it held that the Appellate Division of the Supreme Court, which had reviewed the action of the Surrogate, had properly determined the amount and the rate applicable. An examination of the opinion of the Appellate Division, (195 N. Y. Supp. 541, at page 546,) discloses the following language: "I am therefore of the opinion that the surrogate erred in failing to provide for the present taxation of the remainders limited upon the default in the exercise of the powers, and of issue." It is evident, therefore, that the New

York Court of Appeals, by accepting the opinion of the Appellate Division on this point, did not hold that the tax on the transfer of the remainder was to be assessed in the estate of the donor on the assumption that the power of appointment would be exercised.

*In re Zborowski's Estate,* 213 N. Y. 109, 107 N. E. 44, cited by counsel, does not involve a power of appointment but in that case the estate was given, in trust, for the testator's son. The income was to be paid to him until he reached the age of twenty-one years when he was to receive the principal, but if he died before reaching that age, the principal was to go to his issue, if any, and in default of issue, to certain persons who were in a class taxable at the highest rate. It is readily seen that the contingency, there, was one which was created by the will of the testator and there was no possibility of the existence of a separate transfer such as would occur in the exercise of a power of appointment.

*In re Parker's Estate,* 226 N. Y. 260, 123 N. E. 366, is also cited as evidence that the new York Court of Appeals considered the "highest rate" as that which would be the highest rate called for by section 230 of their act, which corresponds to section 25 of our act, and that such "highest rate" was to be derived on the assumption that the donee of the power would exercise it. Such, as we view it, is not the holding of that court. In that case James V. Parker, by his will, gave the income of property, which had been placed in trust, to Edith S. Parker, wife of John H. Parker, during her life, and on her death the principal was to be divided among her then living children and issue of deceased children living at the time of her death. Such children were to receive their shares, in trust, during their lives with the remainders to such as they might, by will, appoint, and in case of default of appointment the remainder to go to their heirs-at-law. The will contained a residuary clause which provided that any legacies or devises that for any

reason lapsed or failed, were to become a part of the residuum and to go to the residuary legatee and devisee, John Harleston Parker, a nephew of the testator. It is easy to see from the provisions of that will that a possible contingency existed which might make the principal of the trust a part of the residuum and thus go to one farther removed. This would be so if Edith S. Parker died leaving no issue or children of issue surviving her. The question in the case was the rate at which the transfer of the remainder was to be taxed. It was held that such a possible contingency as we have above referred to, if it came to pass, would bring these remainders into the residuary estate passing to John Harleston Parker, thus making a higher tax than would be assessed if the remainder went to the heirs-at-law of the appointees of the power. And so it was held that the tax should be assessed on the assumption that the remainders would go, not to the heirs-at-law of the appointees of the power, who were to take in default of appointment, and, in which instance, the tax would amount to something over $8000, but, because of the possibility of the principal of the trust falling into the residuary estate, the tax should be assessed on the assumption that such would happen, thus resulting in a tax of something over $11,000. It is plain that had the court considered that the tax should be assessed on the assumption that the donees of the power of appointment would appoint a stranger to the blood of the testator, the tax would have been substantially more and the rate higher than that applied to the nephew, who was the residuary legatee and devisee, and so, also equally clear, that in the consideration of possible contingencies the exercise of the power of appointment was excluded.

In a case such as this the rule should be that where powers of appointment are created, the tax should be presently assessed in the estate of the donor to be paid by his trustee or executor, as the case may be, and based on the assumption that the power would not be exercised.

The county court erred in assessing the tax on the assumption that the donee of the power would exercise it for the benefit of a stranger. Its order and judgment is reversed and the cause remanded, with directions to assess the tax in accordance with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE FARTHING, dissenting:

As I understand it, the following language in the majority's decision means that, as amended, sub-section 4 of section I remains an exception to section 25: "It will be noted that section 25 as it existed in 1935, required the imposition of a tax upon the transfer at the highest rate possible 'under the provisions of this act,' and unless sub-section 4, providing that the exercise of the power shall be deemed a taxable transfer by the donee of the power, the same as though bequeathed by him by will, is to be considered no longer a part of the act, then, under the holding of the *Linn* and *Cavenee cases,* sub-section 4, as it now stands, must, to the extent of its terms, be taken as a limitation upon the power conferred by section 25."

In the *Linn case,* the reason assigned was that since the exercise of the power by the donee and its non-exercise were both covered by sub-section 4 of section I, section 25 was not applicable. The 1933 amendment repealed that part of sub-section 4 dealing with the non-exercise of the power. This change removed the entire basis for the holding in the *Linn case,* and the majority opinion recognizes the fact in holding that in the case before us, the subject matter of the power is presently taxable. How then can sub-section 4, as amended, be an exception to section 25?

It is stated that "as sub-section 4 provides for an entirely different transfer tax to be assessed in the estate of the donee of the power, where the power is exercised, to assume that it would be exercised, is to assume a situation wherein the State would have no power whatever to assess a tax in

the estate of the donor of the power. *People* v. *Linn, supra,* and *People* v. *Cavenee, supra."*

The same reasons exist in support of an assumption that the donee of the power will exercise it in favor of a stranger, in this case, that exist in any other case involving some future contingent event which, if it happens, as it may well do, will make the highest rate of inheritance tax applicable.

The provision in sub-section 4 of section 1 that the transfer shall be taxable in the estate of the donee of the power in case of an exercise of the power, merely makes applicable the rates determined by the degree of relationship between the donee of the power and his appointees. The tax is on the transfer and this provision does not make it a new transfer. It remains as it has always been in law, a transfer from the donor to the appointee. *Northern Trust Co.* v. *Porter,* 368 Ill. 256.

The holding in *People* v. *Cavenee,* 368 Ill. 391, does not support the majority decision. The effect of that decision was to remove from taxation the gifts or property covered by powers of appointment created prior to the amendment of sub-section 4 of section 1, which repealed the latter part of that sub-section, where such powers were not exercised.

Sub-section 4 cannot remain an exception to section 25 and at the same time allow section 25 to require present taxation of the property which is the subject of the power of appointment. This holding, like *People* v. *Linn,* 357 Ill. 220, and *People* v. *Cavenee, supra,* results in loss to the State.

The logical result of the majority opinion would be to require another transfer tax in case the power is exercised, but this result is not admitted by the majority.

The objections urged here apply also to the majority opinion in *People* v. *First Nat. Bank, post,* p. 212.

Mr. JUSTICE ORR, also dissenting.