Audrey Bride LISNER, Jacqueline Marie Lisner, and Jannette Alecia Lisner, Plaintiffs-Appellants,

v.

CHICAGO TITLE AND TRUST COMPANY, as Trustee under Trust Number 47554, and Jack A. Coney, Defendants-Appellees.

No. 78–1028.

United States Court of Appeals, Seventh Circuit.

Argued May 26, 1978.

Decided Aug. 14, 1978.

Rehearing and Rehearing En Banc Denied Oct. 2, 1978.

Hamilton Smith, Chicago, Ill., for plaintiffs-appellants.

Charles G. Roth, Peoria, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and HARPER, Senior District Judge.*

PELL, Circuit Judge.

Nicholas Bride (Nicholas) died in 1957, seised of a farm in Woodford County, Illinois. His will devised a life estate in the farm to his brother, Isadore Bride (Isadore), followed by a second life estate to Isadore's daughter, plaintiff-appellant Audrey Bride Lisner (Audrey), with the remainder in fee to Audrey's children. At the time of Nicholas' death, Isadore was 77 years old. He is still living.

In the 1951 will executed by Nicholas (superceded as discussed *infra* by a 1953 codicil) it was provided that after Isadore's death and prior to Audrey's attaining 35 years of age, a trustee would collect rents and incomes and pay expenses on the property and pay to Audrey only the net income from the farm. The will also created a power in Audrey to convey the property once she attained 50 years of age. The 1953 codicil set forth more liberal provisions. After restating the life estate to Isadore and the subsequent life estate to Audrey, the codicil stated, as pertinent:

> After the death of said Isadore . . . and until said Audrey . . . shall have attained the age of twenty-five years, said real estate shall be managed and looked after for her benefit by [a trustee] . . . .. After she becomes entitled to receive the income from such real estate herself, she shall pay all . . expenses . . . and keep said premises in a proper state of repair. *After she shall have attained the age of twenty-five years and become entitled, also, to the income from such real estate, said Audrey . . . shall have full power to sell, dispose of and convey all or any part or parts of said real estate.* . . . In the event of any such sale or sales by her, my said niece shall be entitled to the proceeds of such sale or sales without any further accounting therefor. This power shall not give my said niece the right or authority to mortgage or create any lien on said real estate. [Emphasis added.]

Audrey left her father's home to attend college in California, where she has since resided. She married, and later was divorced in 1963. By the fall of 1964, her husband having made no support payments, she was in serious need of funds. She was also suffering from physical ailments. She communicated with one Thomason, a Peoria, Illinois lawyer, about selling the Woodford County farm. Thomason, in turn, got in touch with a local real estate broker who had, from time to time, been employed by defendant-appellee Jack A. Coney. The broker discussed the farm with Coney, an attorney who devoted substantial time to

---

* Senior District Judge Roy W. Harper of the Eastern and Western Districts of Missouri is sitting by designation.

the real estate business. In due course, Coney and Audrey agreed to a sale of the farm at the price of $13,500,[1] the consideration was paid and a deed was given. There is no dispute that both parties to the sale understood that Audrey was conveying a remainder in fee simple, subject to Isadore's life estate.

This action was brought in 1977 to obtain relief in the form of alternative declarations that Audrey had no power to dispose of or convey any interest in the farm until after Isadore's death, and that the deed is therefore void; that the purported signatures on the deed recorded [2] are not genuine and that the deed is thus void; and that Audrey was overreached in the deal, making the transfer voidable. The district court dismissed the complaint insofar as it alleged overreaching (and thus fraud) for failure to plead with the specificity required by Rule 9(b), Fed.R.Civ.P., and on cross-motions, granted summary judgment to the defendants [3] on the claim that Audrey had no power to convey a remainder in fee. The court construed Nicholas' will and codicil as imposing a limit on Audrey's power to appoint the property before Isadore died, but reasoned that the limit was merely a condition on the exercise of the power, and that the appointment was therefore effective, with Coney's enjoyment of its benefits to be deferred until the condition occurred.[4] Audrey and her children (and co-plaintiffs), Jacqueline and Jannette, have appealed.

■ We address the primary issue, the effectiveness of Audrey's conveyance, first. Although the complaint alleges that Audrey could convey no interest in the farm prior to Isadore's death, plaintiffs now concede that Nicholas' will and codicil devised a vested life estate to Audrey (subject, of course, to divestment in the event Audrey predeceased Isadore), the alienation of which was not restrained under Illinois law. See *Gray v. Shinn*, 293 Ill. 573, 127 N.E. 755 (1920). The question, then, is only whether the power granted to Audrey to convey the fee remainder could be exercised before Isadore's death.

We agree with the district court that Nicholas' intent is basically clear. He had a plainly discernible concern that Audrey might immaturely and unwisely convey the fee remainder, thereby depriving her children of their interest in the farm. Although his 1953 codicil gave Audrey a power less limited than he had created in his 1951 will his continuing concern is evident from the terms of his will as revised. Even though her father might have died, e. g., in 1958, when Audrey was 21 years old, she was not to be allowed to receive gross income and pay expenses until she became 25. She was not given the power to mortgage or encumber the farm at any time. And the power to convey the fee remainder was expressly stated to arise only "[a]fter she shall have attained the age of twenty-five years *and become entitled, also, to the income from such real estate.*" The emphasized language would be surplusage if construed to refer only to the fact that Audrey was not entitled to receive income directly until she reached the age of 25. That restriction was clearly articulated earlier in the pertinent codicil provision. In our opinion, the only reasonable reading is that the

---

1. The per acre price was approximately $75. An affidavit filed in opposition to the motion for summary judgment, apparently not disputed as to accuracy, stated that the value in late 1964 was $375 per acre.

2. Although Audrey conceded in her pleadings that she had executed a deed, she indicated that it was in *quitclaim* form. The deed which was recorded was a warranty deed. The complaint alleged, and Audrey's affidavit avers, that the warranty deed is not the deed she executed.

3. Audrey's conveyance was to Chicago Title and Trust Company as trustee of a land trust in which Coney held the beneficial interest. Chicago Title was thus made a party defendant in that capacity.

4. The court treated the prayer for a declaration that the recorded deed was not genuine as subsumed by the prayer for declaratory relief on the basis of overreaching. We think this was error. Whether a quitclaim or a warranty deed was in fact executed by Audrey is a matter of live dispute between the parties with significance independent of the overreaching claim, as will be discussed more fully *infra*.

testator intended that Audrey have no power to convey prior to the time of her father's death, which, of course, would be the first time she could become entitled to the income from the farm. This reading has the additional virtue of giving meaning to all of the language of the devising provision. This factor has particular significance here, where the emphasized language was *added* to the devise by the same codicil that reduced the age at which the power was to be exercisable from 50 to 25. Under the provisions of the original will, Isadore would have had to live to be 107 for a limitation on the power based on his death to have any effect. Under the codicil, however, if Isadore lived nine years after its execution (to the age of 82) the additional limitation would be meaningful. We conclude, accordingly, that Nicholas' will and codicil created a power in Audrey to convey the fee remainder only after Isadore's death.

■ Obviously, then, Audrey's deed to Coney could not have been an exercise of the power, for the power did not then exist. Nor will it do to treat the deed as a contract to exercise the power when it became exercisable, for the law does not allow such contracts to be enforced:

> The donee of a power not presently exercisable cannot contract to make an appointment. If the promise to make such an appointment is not performed the promisee cannot obtain damages or the specific property; but the fact that the power is not presently exercisable does not prevent him from obtaining restitution of value which he has given for the promise.

3 Restatement of Property § 340 at 1902 (1940). The comments to this Restatement provision emphasize this rationale: the donor of the power in such cases clearly intended that the donee's discretion be retained until the stipulated time. Enforcing a purported exercise of the discretion or a contract to exercise it would entirely nullify the donor's intent. This, of course, is exact-ly the result for which Coney contends. The Supreme Court of Illinois expressly adopted the Restatement rule in *Northern Trust Company v. Porter*, 368 Ill. 256, 266–67, 13 N.E.2d 487 (1938),[5] and we apply it here. *See also* 2 L. Simes & A. Smith, The Law of Future Interests § 1013 at 488 (2d ed. 1956).

The district court thought a different result was indicated by *Rosenthal v. First National Bank of Chicago*, 40 Ill.2d 266, 239 N.E.2d 826 (1968), on which appellees primarily rely. We disagree. In *Rosenthal*, a trust fund was established with a life estate in the testator's wife and a succeeding life estate in his son, with a testamentary power of appointment in the son. Emphasizing that there was nothing in the testator's will implying that the power of appointment was conditioned on the son's surviving the wife, the court refused to infer such a condition, and accordingly held that the son's valid testamentary appointment was effective, notwithstanding that the enjoyment by the appointee would necessarily have to be deferred until the death of the wife. Here, of course, we have found—as did the district court—that the testator *did* condition the exercise of the power on the prior death of the first life tenant, Isadore. *Rosenthal* says and implies nothing about the question before us, which is whether the donee of a power can, by purporting to exercise it prematurely, destroy valid limitations on its exercise intended by the donor. *Northern Trust* and the Restatement answer that question in the plaintiffs' favor.

■ The district court also opined, and appellees insist, that in any event Audrey and her children are estopped to attack Coney's title because of the effect of the Illinois Conveyances Act, Ill.Rev.Stat.1975, ch. 30, § 8. The statute provides that when land is conveyed by warranty deed, the grantor warrants that he or she is seised of an unencumbered indefeasible estate in fee simple and has full power to convey the same, and further warrants the quiet and

---

**5.** The Restatement rule was in tentative draft form at the time *Northern Trust* was decided, but it was finally promulgated in 1940 in identical language.

peaceable possession of the premises, and that the grantor "will defend the title thereto against all persons who may lawfully claim the same." These warranties are expressly applicable to the grantor and "his heirs and personal representatives." As *Biwer v. Martin*, 294 Ill. 488, 495–97, 128 N.E. 518 (1920), makes clear, these covenants estop the grantor and his or her heirs thereafter to attack the grantee's title.[6]

 We note at the outset in considering this argument that it is premised on the assumption that the recorded warranty deed was in fact executed by Audrey. Her complaint and her affidavit deny this, and the district court erred in treating the issue as undisputed on summary judgment proceedings. If, on further proceedings, it should develop that a warranty deed was executed, it may well be that Audrey would be estopped to attack Coney's title. Indeed, unless there is room to assert waiver, she may even have an obligation to defend the title. These matters may be appropriately considered on remand.

As a matter of law, however, we think it clear that Jannette and Jacqueline cannot be estopped by Audrey's warranties, if any were made. Audrey's children were given a remainder interest in the farm directly by Nicholas' will and codicil. Although they may in fact be among Audrey's heirs when she dies, their rights in the farm do not depend in any way on that status. Accordingly, they cannot be estopped as Audrey's "heirs" by any warranties Audrey may have made in her deed to Coney. *Ebey v. Adams*, 135 Ill. 80, 25 N.E. 1013, 1016 (1890).[7] As it is the children's remainder in fee which is most directly in issue in this litigation, it is evident that appellees' estoppel

argument can have no major effect on the substantial issues herein.

 In view of our conclusion that Audrey could have conveyed and did convey no more than her life estate to Coney, and that her children at least are free to attack the purported transfer of greater title, we deem it unnecessary to consider Audrey's claim that she was overreached in making her deal with Coney. By virtue of our decision, it is plain that Coney did not receive what he bargained for, and it is entirely possible that, knowing this, he will prefer to seek to set the transaction aside and obtain restitution with interest. On the other hand, it is conceivable that he will wish to affirm the transaction insofar as it conveyed to him Audrey's life estate. Isadore's life expectancy at this point cannot be other than minimal, and Audrey is only 41 years old. Should Coney wish to stand on the transaction as we have interpreted its legal effect, it will be time enough for Audrey, by a suitably specific pleading, to allege that she was overreached in conveying her life estate interest to Coney, if that is her desire. We also see no reason to consider appellees' asserted defenses of the statute of limitations, laches, ratification, and unclean hands at this time. The district court did not reach them, correctly concluding that they pertain most directly to the overreaching claim. That claim, as we have said, may well now be abandoned, and there is no point in extending the length of this decision by paraenesis as to what the district court should do *if* the particular claim proceeds. We note only that the statute of limitations would clearly not bar this action by Audrey's minor children, Ill.Rev.Stat.1975, ch. 83, § 22, nor,

---

6. *Biwer* also states the Illinois rule that if the grantor did not have title at the time of conveyance but thereafter acquires it, the title passes to the grantee by estoppel. Appellees cite this rule and, without analysis, urge us to apply it here. We decline the invitation. First, under the terms of Nicholas' will and codicil, Audrey will not, even at Isadore's death, acquire title to the property in fee, and it is the title which is warranted and which creates the estoppel. Second, and more to the point applying the doctrine here would eviscerate the rule of *Northern Trust, supra,* and allow the intent of

the donor of a power to be totally ignored, if only a warranty deed is used in a premature exercise of the power. We know of no authority for such a proposition, and appellees cite none.

7. Obviously, depending on the outcome of the warranty deed issue on remand, there is a real possibility of a divergence between the legal positions of Audrey and her children, who are still minors. We assume that the district court will be aware of the appropriateness of guardian ad litem representation for the children.

apparently, would laches, *see Smith v. Sackett*, 10 Ill. 534, 544 (1849); *Tearney v. Fleming*, 48 Ill.App. 507, 511 (1892), and it is impossible to conceive how the minor children could be guilty of unclean hands or held to have ratified the transaction. Appellees have made absolutely no response to appellants' arguments on this point.

For the reasons we have given, the judgment of the district court is reversed and remanded with directions to enter summary judgment at least in favor of Jacqueline and Jannette on the issue of the effect of Audrey's conveyance, and for further proceedings consistent herewith.